**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
HITLER CALLE, *individually and on behalf*
*of others similarly situated,*

                   *Plaintiff,*

      -v-

PIZZA PALACE CAFÉ LLC (D/B/A PIZZA
PALACE, SASHA ISHAQOV, YURI
ISHAQOV, and VLADY DJOURAEV ,

               *Defendants.*
-----------------------------------------------------X

Index No. 20-cv-4178

**DECLARATION OF MICHAEL**
**FALLACE, ESQ. IN SUPPORT OF**
**ENTRY OF DEFAULT JUDGMENT**

    MICHAEL FAILLACE, under penalty of perjury, affirms the following to be true to the best of his knowledge:

    1.      I am an attorney licensed to practice in this state and before this Court.

    2.      I am the Managing Partner of the law firm of Michael Faillace & Associates, PC, counsel for Plaintiff in the above-captioned matter. I submit this affidavit in support of said Plaintiff's instant motion by Order to Show Cause for an entry of default judgment against Defendants PIZZA PALACE CAFÉ LLC (D/B/A PIZZA PALACE, SASHA ISHAQOV, YURI ISHAQOV, and VLADY DJOURAEV ("Defendants").

    3.      Plaintiff seeks the entry of default judgment against Defendants on account of their erstwhile failure to file an Answer to Plaintiffs' Complaint, dated September 8, 2020, and/or Plaintiffs' First Amended Complaint, dated December 22, 2020, in which Plaintiffs asserted against Defendants causes of action for unpaid minimum wages and overtime under the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL), and a cause of action for unlawful deduction from wages for Defendants' requiring Plaintiffs to purchase "tools of the trade' from his own funds.

4.     This court has jurisdiction over Defendants because, at all relevant times, Defendants resided and/or transacted business, and employed Plaintiffs within this judicial district.

5.     This court has subject matter jurisdiction over Plaintiffs' claims under the Fair Labor Standards Act pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in this judicial district for the reasons stated in Paragraphs 4 and 5 above.

<u>Procedural History</u>

7.     Plaintiffs filed the Complaint ("Complaint") against Defendants Pizza Palace Café LLC (d/b/a Pizza Palace), Leoy Doe, Sasha Doe, Vlad Doe, and Yuri Doe on September 8, 2020.  (see ECF Doc. No. 1).

8.     Defendant 99 Pizza Palace Café LLC was served with Summons and Complaint on October 16, 2020. (see ECF Doc No. 13).

9.     Plaintiffs filed the First Amended Complaint ("Amended Complaint") against Pizza Palace Café LLC (d/b/a Pizza Palace), Sasha Ishaqov, Yuri Ishaqov, and Vlady Djouraev in this matter on December 22, 2020 (see ECF Doc. No. 14).

10.     Defendant Pizza Palace Café LLC (d/b/a Pizza Palace) was served with Amended Summons and Amended Complaint on March 8, 2021 2019 (see ECF Doc. 20).

11.     Defendant Sasha Ishaqov was served with Amended Summons and Amended Complaint on April 1, 2021 (see ECF Doc. No. 21).

12.     Defendant Yuri Ishaqov was served with Amended Summons and Amended Complaint on April 1, 2021 (see ECF Doc. No. 23).

13.     Defendant Vlady Djouarev was served with Amended Summons and Amended Complaint on April 1, 2021 (see ECF Doc. No. 22).

14.     Defaulting Defendants have not filed any Answer or moved with respect to the Complaint.

15.     Upon Plaintiff's request on April 30, 2021, Certificates of Default were entered in this matter against Defendants Pizza Palace Café LLC  (see ECF Doc. 27),

16.     The applicable default applies to all current Defendants in this case.

Legal Standard for Entry of Default Judgment

17.      Upon entry of a default, the court may award damages based upon evidence submitted through declarations and exhibits, or by an evidentiary hearing. Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012). "While Rule 55[b][2] permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory." Id. "Together, 'Rule 55[b][2] and relevant case law give district judges much discretion in determining when it is "necessary and proper" to hold an inquest on damages.'" Id. (quoting Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993)).

18.     Under Rule 55(b)(2)(B), it is well within the discretion of the Court to decline to hold such a hearing when the plaintiff submits an affidavit attesting, based on "real numbers," to the extent of damages. See Tamarin v. Adam Caterers, Inc., supra.

Plaintiff's Calculation of Damages

19.     As demonstrated in the Damage Calculation spreadsheet attached hereto as **Exhibit A**, and as testified to by Plaintiff in the declaration attached hereto as **Exhibit B**, the damages sustained by the respective plaintiffs can be ascertained and computed. Therefore, no hearing is required as to the extent of such damages.

20.     In the damages chart, the Plaintiff's wage and hour damages (including overtime wage damages, spread of hours wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods."  Each pay period calculates the number of weeks in each period ("No. of Weeks in Pay Period"), and then based upon each of the Plaintiff's affidavits, lists the number of hours worked per week in each period ("Hours Per Week in Period). The applicable minimum wage data, and associated overtime rate, are included as applicable for each pay period. Then there is a column for Paid Wages, the first column calculates the "regular rate of pay" for each period by dividing the amount actually paid each week to each Plaintiff (the "Credited Weekly Pay") for each period, then dividing that amount by 40 pursuant to 12 NYCRR §146-3.5, which sets forth this standard for calculating effective hourly rate for employees in the hospitality industry who were unlawfully paid a fixed weekly salary. The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculation later in the chart.  The "Credited Weekly Pay" is the amount of money actually paid and is based upon the Plaintiff's affidavits. The information the number of days each week in that period for which the Plaintiffs worked in excess of 10 hours per day is also included, and was therefore entitled to Spread of Hours Pay ("No. of SOH Days Per Wk in Period").

21.     Calculations within the Chart – The "Lawful Weekly Pay" column of the chart calculates what the Plaintiffs should have been paid per week during each pay period. The actual formula used in this column is as follows:( (greater of minimum wage or calculated base pay) * Hours Per Week up to 40) + ((greater time and a half rate) * (Hours Per Week over forty, if any)).

22.     The chart therefore automatically determines whether the effective calculated base rate of pay falls below the minimum wage, and if it does, it discards it.  If it does not, it uses it for the subsequent calculations (as the Plaintiffs are entitled to earn at least the minimum

wage). The chart then automatically calculates what the hours should have been compensated at under the base rate of pay up to the first 40 hours of work per week, and then at time-and-a-half pay for any hours over 40.   The Chart then subtracts the amount actually paid to the Plaintiffs (the "Credited Weekly Pay") and then derives the "Underpayment per Week." This number is then multiplied by the number of weeks in each period and derives the total damages due for unpaid minimum wages and overtime for each period ("Unpaid Wages & OT").  The Chart then applies the liquidated damages provisions of the NYLL to the "Unpaid Wages and OT" automatically in the "Liq. Damages on Wages & OT" by 100%.

23.    The unpaid spread of hours pay ("Unpaid Spread of Hours (SOH) Pay") is derived by multiplying (the number of SOH days per week) * (the number of weeks per period) * (the minimum wage).  The liquidated damages on SOH pay are all calculated at the rate of 100%.

24.    From January 1, 2017 until April 30, 2017, when the applicable minimum wage under New York law was $11.00 per hour, Plaintiff was paid a weekly salary of $910 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $22.75 and thus an effective overtime rate of $34.13. He worked 56 hours per week during this period and thus entitled to be paid $1,456.00 per week for the 17 weeks during this period. He was thus underpaid $546.00 per week, for a total of $546 * 17 = $9,282.00. Under the NYLL, he is entitled to an additional $9,282.00 in liquidated damages for unpaid overtime for this time period.

25.    From May 1, 2017 until August 31, 2017, when the applicable minimum wage under New York law was $11.00 per hour, Plaintiff was paid a weekly salary of $930 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $23.25 and thus an effective overtime rate of $34.88. He worked 59 hours per

week during this period and thus entitled to be paid $1,592.63 per week for the 17 weeks during this period. He was thus underpaid $662.63 per week, for a total of $546 * 17 = $11,264.63. Under the NYLL, he is entitled to an additional $11,264.63 in liquidated damages for unpaid overtime for this time period.

26.     From September 1, 2017 until December 21, 2017, when the applicable minimum wage under New York law was $11.00 per hour, Plaintiff was paid a weekly salary of $910 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $22.75 and thus an effective overtime rate of $34.13. He worked 56 hours per week during this period and thus entitled to be paid $1,456.00 per week for the 17 weeks during this period. He was thus underpaid $546.00 per week, for a total of $546 * 17 = $9,282.00. Under the NYLL, he is entitled to an additional $9,282.00 in liquidated damages for unpaid overtime for this time period.

27.     From January 1, 2018 until April 30, 2018, when the applicable minimum wage under New York law was $13.00 per hour, Plaintiff was paid a weekly salary of $910 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $22.75 and thus an effective overtime rate of $34.13. He worked 56 hours per week during this period and thus entitled to be paid $1,456.00 per week for the 17 weeks during this period. He was thus underpaid $546.00 per week, for a total of $546 * 17 = $9,282.00. Under the NYLL, he is entitled to an additional $9,282.00 in liquidated damages for unpaid overtime for this time period.

28.     From May 1, 2018 until August 31, 2018, when the applicable minimum wage under New York law was $13.00 per hour, Plaintiff was paid a weekly salary of $930 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $23.25 and thus an effective overtime rate of $34.88. He worked 59 hours per

week during this period and thus entitled to be paid $1,592.63 per week for the 17 weeks during this period. He was thus underpaid $662.63 per week, for a total of $546 * 17 = $11,264.63. Under the NYLL, he is entitled to an additional $11,264.63 in liquidated damages for unpaid overtime for this time period.

29.     From September 1, 2018 until December 31, 2018, when the applicable minimum wage under New York law was $13.00 per hour, Plaintiff was paid a weekly salary of $910 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $22.75 and thus an effective overtime rate of $34.13. He worked 56 hours per week during this period and thus entitled to be paid $1,456.00 per week for the 17 weeks during this period. He was thus underpaid $546.00 per week, for a total of $546 * 17 = $9,282.00. Under the NYLL, he is entitled to an additional $9,282.00 in liquidated damages for unpaid overtime for this time period.

30.     From January 1, 2019 until April 30, 2019, when the applicable minimum wage under New York law was $15.00 per hour, Plaintiff was paid a weekly salary of $910 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $22.75 and thus an effective overtime rate of $34.13. He worked 56 hours per week during this period and thus entitled to be paid $1,456.00 per week for the 17 weeks during this period. He was thus underpaid $546.00 per week, for a total of $546 * 17 = $9,282.00. Under the NYLL, he is entitled to an additional $9,282.00 in liquidated damages for unpaid overtime for this time period.

31.     From May 1, 2019 until August 31, 2019, when the applicable minimum wage under New York law was $13.00 per hour, Plaintiff was paid a weekly salary of $930 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $23.25 and thus an effective overtime rate of $34.88. He worked 59 hours per

week during this period and thus entitled to be paid $1,592.63 per week for the 17 weeks during this period. He was thus underpaid $662.63 per week, for a total of $546 * 17 = $11,264.63. Under the NYLL, he is entitled to an additional $11,264.63 in liquidated damages for unpaid overtime for this time period.

32.     From September 1, 2019 until December 31, 2019, when the applicable minimum wage under New York law was $15.00 per hour, Plaintiff was paid a weekly salary of $910 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $22.75 and thus an effective overtime rate of $34.13. He worked 56 hours per week during this period and thus entitled to be paid $1,456.00 per week for the 17 weeks during this period. He was thus underpaid $546.00 per week, for a total of $546 * 17 = $9,282.00. Under the NYLL, he is entitled to an additional $9,282.00 in liquidated damages for unpaid overtime for this time period.

33.     From January 1, 2020 until March 17, 2020, when the applicable minimum wage under New York law was $15.00 per hour, Plaintiff was paid a weekly salary of $910 per week. His regular rate of pay is thus calculated by dividing .this amount by 40, resulting in an effective hourly rate of $22.75 and thus an effective overtime rate of $34.13. He worked 56 hours per week during this period and thus entitled to be paid $1,456.00 per week for the 11 weeks during this period. He was thus underpaid $546.00 per week, for a total of $546 * 11 = $6,006.00. Under the NYLL, he is entitled to an additional $6,006.00 in liquidated damages for unpaid overtime for this time period.

34.     Plaintiff, as shown in Exhibit A, is entitled to an additional $5,000 for Defendants' failure to provide a Wage Notice at the time of hire and an additional $5,000 in damages for Defendants' failure to provide a Wage Statement for well in excess of twenty workdays.

35.     As shown in Exhibit A (column V), interest has accrued on the unpaid minimum wages and overtime pay owed to Plaintiff Penate in the amount of (as of July 8, 2020) $67,696.23. This figure is computed by multiplying (the number of days that has passed between now and the midpoint[1] of the time period during which the unpaid minimum wage and/or overtime was earned) times (0.09, the annual pre-judgment interest rate provided under New York law[2] / 365, the number of days per year) times (the amount of unpaid minimum wage and/or overtime).

36.     As attested to in the Plaintiff's Declaration (¶15) and accounted for in Column V of Exhibit E, Plaintiff was unlawfully required to purchase "tools of the trade," including uniforms and hairnets, in the amount of $308.00, and Plaintiff Calle is entitled to recover in this amount for such expenditures.

Plaintiff's Attorneys' Fees

37.     Plaintiffs have entered into a retainer agreement with their counsel, Michael Faillace & Associates, P.C. ("the firm"), under the terms of which the firm would be entitled to recover all costs expended pertaining to this matter ("costs") out of funds recovered pursuant to a judgment or settlement agreement, plus 40% of all remaining proceeds of such judgment or settlement agreement. Plaintiffs, through their counsel, ask the Court to approve the payment of costs and attorneys' fees to the firm from the proceeds of the default judgment to be entered in accordance with the terms of said retainer agreement.

---

[1] In instances where liabilities on which interest accrues were incurred over an extended period of time, courts have often found it useful to use the midpoint of such time for purposes of calculating the amount of interest accrued. See, e.g., U.S. Fidelity and Guar. Co. v. Braspetro Oil Services Co., 369 F.3d 34 (2d Cir. 2004).

[2] N.Y. CPLR § 5004. The state law rate of interest governs for judgment on all claims arising under state law (even if such judgment is obtained in federal court). See, e.g., Pereira v. Marshall & Sterling, Inc (In re Payroll Express Corp), 2005 Bankr. LEXIS 3147, *6-7 (Bankr. S.D.N.Y. July 28, 2005)

38.     In the alternative, Plaintiffs request that the Court approve payment to the firm of all costs plus fees in the amount of $9,812.10in accordance with the billing records attached hereto as **Exhibit C** The hourly rates, and justifying credentials thereof, of the respective attorneys and support staff who worked on this matter are set forth below.

a.  Michael Faillace, Esq., the Managing Member of Michael Faillace & Associates, P.C., has been in practice since 1983.  From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). He taught employment antidiscrimination law as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and he is a nationally-renowned speaker and writer on employment law.  He is also the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations. His work is billed at the rate of $450 per hour, his standard billing rate for matters paid on an hourly basis. Courts have routinely held that hourly fees of $450, or even $500, for counsel with Mr. Faillace's level of experience (37 years) and expertise are reasonable. See, e.g., Manley v. Midan Rest. Inc., No. 1:14-cv-1369 (S.D.N.Y. March 27, 2017), Doc. No. 42 at *32, 35-37 (fees of $500 per hour for FLSA litigator with 34 years of experience).

b.  Clela A. Errington, is an associate at Michael Faillace & Associates, P.C. She is a 2012 graduate of New York University School of Law. She began my career at a series of small law firms focusing on labor and employment law, followed by several years providing litigation support to large law firms. She returned to litigation in 2019, practicing commercial litigation debt lawsuits at the Jones Law

Firm, P.C.. and joined Michael Faillace & Associates in 2020. Her work is billed at the rate of $350 per hour and indicated by the initials "CE."

39.     A Proposed Form of Judgment is attached hereto as **Exhibit D.**

Dated: New York, New York

May 10, 2021.

                       /s
                       MICHAEL FAILLACE, ESQ.