UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
HITLER CALLE, *individually and on*
*behalf of others similarly situated*,

                    Plaintiff,                    **REPORT AND RECOMMENDATION**
                                                      **20 CV 4178 (LDH)(LB)**

      -against-

PIZZA PALACE CAFÉ LLC
(D/B/A PIZZA PALACE),
SASHA ISHAQOV, YURI ISHAQOV, and
VLADY DJOURAEV,

                    Defendants.
-----------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

      Plaintiff Hitler Calle[1] brings this action under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. § 201 et. seq., and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 et. seq. and

650 et. seq., alleging that defendants failed to pay him overtime wages, provide spread-of-hours

pay, provide required wage statements and notices, and seeking recovery of equipment costs. First

Am. Comp. ("FAC") ¶¶ 5-7, 10, 82-83, ECF No. 14. Despite proper service of the summons and

complaint, defendants have failed to plead or otherwise defend this action. Plaintiff now moves

for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. ECF No.

28. The Honorable LaShann DeArcy Hall referred plaintiff's motion for a default judgment to me

for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth

below, it is respectfully recommended that plaintiff's motion for a default judgment should be

granted.

---

[1] Plaintiff brought this case purportedly as a Collective Action under 29 U.S.C. ¶ 216(b), however, he seeks a default
judgment only on his own behalf.

## BACKGROUND[2]

Plaintiff worked as a pizza maker at Pizza Palace, defendants' pizza restaurant located in Forest Hills, Queens, from approximately January 2017 through March 17, 2020, FAC ¶¶ 15, 22, 32. Plaintiff asserts that defendants Sasha Ishaqov, Yuri Ishaqov, and Vlady Djouraev (the "individual defendants") were all "joint employers" and "share[d] control over the employees" of Pizza Palace Id. ¶¶ 23-24. Each individual defendant operated the defendant corporation, Pizza Palace LLC, as "an alter ego of themselves." Id. ¶ 28. In addition, each individual defendant "determine[ed] the wages and compensation of the employees…including Plaintiff Calle, establish[ed] the schedules of the employees, maintain[ed] employee records, and [had] the authority to hire and fire employees." Id. ¶¶ 19-21. Plaintiff alleges that during the entirety of his employment, the restaurant had "gross annual sales of not less than $500,000" and that the restaurant used "numerous items" which travelled in interstate commerce, including "mozzarella cheese and other supplies." Id. ¶¶ 30-31, 36. He also claims that he was "required…to purchase 'tools of the trade' with his own funds – including uniform shirts, shoes, pants, and a hairnet." Id. ¶ 47. Plaintiff's hours at the restaurant varied depending upon the time of year and day of the week. Id. ¶ 39.

From 2017 through 2019, plaintiff worked the following hours: Monday through Thursday from approximately 12:00 p.m. until approximately 10:00 p.m. Id. ¶¶ 39-40. On Fridays, from approximately 9:00 a.m. until approximately 5:00 p.m between the months of May through October, and from approximately 9:00 a.m. until about 2:00 p.m. between the months of November and April. Id. On Sundays, plaintiff worked from approximately 11:00 a.m. until approximately

---

[2] The facts are drawn from the allegations in plaintiff's first amended complaint and documents incorporated by reference. The allegations in the complaint are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment).

10:00 p.m. Id. In total, plaintiff worked approximately 59 hours per week between the months of May and October in 2017 through 2019; and approximately 56 hours per week between the months of November and April in 2017 through 2020. Id.

Defendants paid plaintiff in cash. Id. ¶ 41. Plaintiff received $930 per week during the months of May through October in the years 2017 through 2019. Id. He received $910 per week during the months of November through April in the years 2017 through 2020. Id. Plaintiff alleges that he was not paid at all for a period of one month and two weeks.[3] Id. ¶ 42. Defendants did not require plaintiff to track his hours and never provided notices regarding overtime and other wages as required by FLSA and the NYLL. Id. ¶¶ 43-45. Plaintiff never received overtime pay when he worked over 40 hours per week nor spread of hours pay when he worked in excess of 10 hours per day. Id. ¶¶ 48. Plaintiff asserts that defendants paid him in cash and did not provide wage statements in a willful attempt to avoid paying proper wages. Id. ¶¶ 51-53. Plaintiff never received accurate wage statements at the time he was paid nor a notice at the time he was hired which stated his rate of pay. Id. ¶¶ 56-57.

**PROCEDURAL HISTORY**

Plaintiff commenced this action on September 8, 2020, ECF No. 1, and filed an amended complaint on December 22, 2020, ECF No. 14.[4] Plaintiff served defendants with a summons and the FAC, ECF Nos. 20-23, but defendants failed to answer or otherwise respond. The Clerk of Court noted entry of defendants' default. ECF No. 27. Plaintiff now moves for a default

---

[3] Although plaintiff alleges he was not paid for this period, he does not seek compensation for nonpayment of wages.

[4] The original complaint named defendants by their first names and the place holder "Doe." See Compl., ECF No. 1. The First Amended Complaint named defendants by their first and last names and omitted defendant "Leoy Doe." See FAC, ECF No 14.

judgment. ECF No. 28. In support of his motion, plaintiff provides his counsel's declaration (Faillace Decl., ECF No. 29),[5] a damages chart (ECF No. 29-1), plaintiff's declaration (Calle Decl., ECF No. 29-2), an "attorney's fee breakdown" (ECF No. 29-3), a proposed judgment (ECF No. 29-4), and a Memorandum of Law[6] ("Mem. of Law") (ECF No. 32).

## DISCUSSION

### I. Legal Standard for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. Priestly v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011). First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2). Upon the completion of these two steps, the Court must determine if the plaintiffs' well-pleaded complaint establishes a legitimate cause of action. See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 n.17 (2d Cir. 2015).

---

[5] Michael Faillace was suspended from practice in the Southern and Eastern Districts of New York and moved to withdraw from this case. Faillace Mot. to Withdraw, ECF No. 36-1. On December 14, 2021, he submitted an affirmation stating that he "will not individually be asserting a charging or retaining lien in this case." Id. His law firm is now under the sole ownership of Catalina Sojo. Id. Plaintiff filed a declaration acknowledging that he was informed of Mr. Faillace's suspension and the acquisition of his law firm. Calle Dec. 14, 2021 Aff. ¶ 5, ECF No. 36-2. He consented to the substitution of counsel. Id. ¶¶ 5-6. The Court granted Mr. Faillance's Motion to Withdraw on December 15, 2021. ECF No. 37.
The Court notes that plaintiff's counsel's declaration misspells his own name: See ECF No. 29, "Declaration of Michael Fallace, Esq." Counsel's name is Michael Faillace.
[6] Plaintiff initially failed to provide a Memorandum of Law in support of his motion in violation of Local Civil Rule 7.1. The Court ordered plaintiff to provide a Memorandum of Law and he complied. See Electronic Order dated July 13, 2021.

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993) (citing Traguth v. Zuck, 710 F.2d 90, 94 (2d Cir. 1983)); Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981)). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997). Even though the pleadings are deemed admitted, the Court still has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). Though the court must draw all reasonable inferences from the facts in plaintiff's favor to determine defendants' liability, see Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009), it "need not credit the plaintiffs' legal conclusions." Priestly, 647 F.3d at 504.

If the unchallenged facts establish defendants' liability, the Court then determines the amount of damages due. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). In evaluating defendants' liability, the Court is limited to the four corners of the complaint. Rolls-Royce PLC, 688 F. Supp. 2d at 153. The Court is not so restricted in determining damages, which may be

calculated based on documentary evidence, affidavits, or evidence presented at a hearing on damages. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111.

## II. Liability under FLSA and the NYLL

### A. Defendants Were Plaintiff's Employers Under FLSA and NYLL

#### 1. FLSA

Protection under the FLSA requires plaintiff to demonstrate that defendants were his employers and that he was their employee. See 29 U.S.C. §§ 206, 207; Arnoldo Lopez Vazquez v. Lahori Kebab & Grill Corp., No. 18-CV-2117(JS)(SIL), 2019 WL 4396724, at *3-4 (E.D.N.Y. Aug. 13, 2019) Report and Recommendation adopted by 2019 WL 4620922 (E.D.N.Y. Sept. 5, 2019). An employer's liability under FLSA may be either based on "enterprise or individual coverage." Romero v. Floris Constr., Inc., No. 16-CV-4282(PKC)(RLM), 2017 WL 5592681, at *4 (E.D.N.Y. Nov. 20, 2017). Individual coverage refers to "employees…who are personally engaged in interstate commerce or in the production of goods for interstate commerce" and enterprise coverage involves employees "employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce." Id. (internal quotation marks omitted) (quoting Gomez v. El Rancho de Andres Carne de Tres, Inc., No. 12-CV-1264(CBA)(MDG), 2014 WL 1310296, at *3 (E.D.N.Y. Mar. 11, 2014)). In the context of FLSA, the term commerce means interstate commerce. 29 U.S.C. § 203(b). A person is employed by an "enterprise engaged in commerce or in the production of goods for commerce" when the enterprise's employees produce or work on goods that have moved in commerce and it has gross annual sales of $500,000 or more. Id. § 203(s). Once plaintiff demonstrates that his

employment is covered by FLSA, he must then show that defendants failed to abide by FLSA's requirements. Arnoldo Lopez Vazquez, 2019 WL 4396724, at *5.

In pertinent part, under the FLSA, an "employer" means "any person acting directly or indirectly in the interest of an employer…." 29 U.S.C. § 206. "[T]he determination of whether an employer-employee relationship exists for the purposes of FLSA should be grounded in 'economic reality rather than technical concepts.'" Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted) (quoting Barfield v. N.Y.C. Health and Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008)). The Second Circuit instructs that in examining "the 'economic reality' of an employment relationship," Courts should look to "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (3) maintained employment records." Id. (internal quotation marks omitted) (quoting Barfield, 537 F.3d at 142). The analysis "weighs the 'totality of the circumstances'; no one factor is dispositive." Romero, 2017 WL 5592681, at *5 (citing Herman v. RSR Sec. Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999)). Ordinarily, "a corporate officer with operational control over a corporation's covered enterprise" is considered an employer under the FLSA and may be jointly and severally liable along with the corporation. See Wilk v. VIP Health Care Servs., Inc., No. 10 Civ. 5530(ILG)(JMA), 2012 WL 560738, at *7 (E.D.N.Y. Feb, 21, 2012) (internal quotation marks omitted) (quoting Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002)).

Here, plaintiff adequately alleges that Pizza Palace Café LLC and each individual defendant was his employer. The First Amended Complaint states that each individual defendant had control over the Pizza Palace Café LLC and "determines the wages and compensation of the

employees of Defendants, including Plaintiff Calle, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees." FAC ¶¶ 19-20, 29. These facts, coupled with each individual defendant's position as an officer of the corporate entity and operational control over Pizza Palace Café LLC, permit the Court to conclude that the defendants were plaintiff's employers.[7] See Arnoldo Lopez Vazquez, 2019 WL 4396724, at *4 (citing Moon, 248 F. Supp. 2d at 237).

The allegations are also sufficient to establish enterprise coverage liability under FLSA. Plaintiff states that defendants "had a gross annual volume of sales of not less than $500,000" and that the restaurant "regularly handled goods in interstate commerce, such as mozzarella cheese and other supplies produced outside of the State of New York." FAC ¶¶ 30-31, 36. These allegations satisfy the FLSA's requirements. See Newman v. West Bar & Lounge, Inc., No. 20-CV-1141(KAM)(RER), 2021 WL 2401176, at *5 (E.D.N.Y, June 11, 2021); Zhen Ming Chen v. Y Café Ave. B Inc., No. 18-CV-4193(JPO), 2019 WL 2324567, at *2 (S.D.N.Y. May 30, 2019) (finding that a FLSA claim was sufficiently pleaded where plaintiff alleged that defendant engaged in interstate commerce with gross sales over $500,000).

## 2. NYLL

Courts in this Circuit assign a "coextensive" definition to the term "employer" under both the FLSA and the NYLL. See Li v. Leung, No. 15 Civ. 5262(CMA)(VMS), 2016 WL 5369489, at *10 (E.D.N.Y. June 10, 2016)) (quoting Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y 2011) Report and Recommendation adopted by 2016 WL 5349770

---

[7] As other Courts have noted in similar cases, plaintiff's counsel should avoid "'a formulaic recitation of the elements of a cause of action,' which can be 'insufficient to raise plaintiffs' right to relief above a speculative level with respect to that individual's liability as an employer under the FLSA.'" Cardoza v. Mango King Farmers Mkt. Corp., No. 14-CV-3314(SJ)(RER), 2015 WL 5561033, at *2 (E.D.N.Y. Sept. 1, 2015) (internal quotation marks omitted) (quoting Tracy v. NVR, Inc., 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009)) Report and Recommendation adopted by 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).

(E.D.N.Y. Sept. 23, 2016). As a result, a finding that an individual or entity is an employer under

FLSA means they are also an employer under the NYLL. Id. (citing Apple v. Atlantic Yards

Dev. Co., LLC, 11 Civ. 5550(JG), 2014 WL 5450030, at *6-9 (E.D.N.Y. Oct. 27, 2014).

Therefore, Pizza Palace Café LLC and the individual defendants are also plaintiff's employers

under the NYLL.

### 3. The Defendants Are Jointly and Severally Liable

When individual defendants and a corporate entity are both found to be a plaintiff's

employer, "each Defendant is jointly and severally liable under the FLSA and the NYLL for any

damages award made in Plaintiff's favor." Mahoney v. Amekk Corp., No. 14 Civ.

4131(ENV)(VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (citing Pineda v.

Masonry Const. Inc., 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) Report and Recommendation

adopted by 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016); see also Li, 2016 WL 5369489, at *11

(citing Pineda, 831 F. Supp. 2d at 685) (stating that each defendant employer was jointly and

severally liable for damages under the FLSA and the NYLL). Accordingly, each defendant is

liable for any amount awarded by the Court.

### B. Plaintiff is a Non-Exempt Employee

In general, FLSA defines an employee as a person who works for an employer. 29 U.S.C.

§ 203(e)(1), (g). However, certain employees are excluded from FLSA's protections. See id. §

203((e)(2)-(4). It is well established though that cooks and kitchen helpers are not exempt under

the FLSA. See e.g., Campos v. BKUK 3 Corp., No. 18-CV-4036(JGK(KHP), 2021 WL

3540243, at *6 (S.D.N.Y. Aug. 10, 2021) (stating that kitchen workers and food preparers are not

exempt under the FLSA) Report and Recommendation adopted by 2021 WL 3863198 (S.D.N.Y.

Aug. 30, 2021); Newman, 2021 WL 2401176, at *5 (citing Fermin v. Las Delicias Peruanas

Rest., Inc., 93 F. Supp. 3d. 19, 25 (E.D.N.Y. 2015) (finding that a plaintiff who worked as a

dishwasher and kitchen cleaner was non-exempt); Lopic v. Mookyodong Yoojung Nakjie, Inc.,

No. 16-CV-4179(KAM)(CLP), 2017 WL 10845064, at *4 (E.D.N.Y. Sept. 30, 2017).

Here, plaintiff qualifies for protection under the FLSA. See Juan v. Son of Polisi, Inc.,

No. 19-CV-4662(LDH)(PK), 2021 WL 2179344, at *7 (E.D.N.Y Jan. 24, 2021) (finding that a

pizza maker is a non-exempt employee under FLSA) Report and Recommendation adopted by

Electronic Order (E.D.N.Y. Mar. 31, 2021). Plaintiff also qualifies for protection under the

NYLL which is "the state analogue to the federal FLSA." See Fermin, 93 F. Supp. 3d at 34

(quoting D'Arpa v. Runway Towing Corp., No. 12 Civ. 1120 (JG), 2013 WL 3010810, at *18

(E.D.N.Y. June 18, 2013). Courts look to several factors to determine whether a worker qualifies

as an employee under New York law, including whether the worker "(1) worked at his own

convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was

on the employer's payroll; and (5) was on a fixed schedule." Id. (citing Bynog v. Cipriani Grp.,

Inc., 1 N.Y.3d 193, 198 (2003)). Here, plaintiff's regularly scheduled shifts and standard pay

schedule qualify him as an employee under the NYLL. See id.

## C. Liability for Unpaid Wages

## 1. Overtime Pay Under the FLSA and NYLL

The FLSA provides that:

No employer shall employ any of his employees who in any workweek is engaged in
commerce or in the production of goods for commerce, or is employed in an enterprise
engaged in commerce or in the production of goods for commerce for a workweek longer
than forty hours unless such employee receives compensation for his employment in
excess of the hours above specified at a rate not less than one and one-half times the
regular rate at which he is employed.

29 U.S.C. § 207(a)(1); See also, Juan, 2021 WL 2179344, at *9. Similarly, New York law also

requires employers to pay their employees "one and one-half times their 'regular rate' when they

work over forty hours a week. Nam v. Ichiba Inc., No. 19-CV-1222(KAM), 2021 WL 878743, at

*6 (E.D.N.Y. Mar. 9, 2021) (citing 12 N.Y.C.R.R. § 142-2.2). A plaintiff sufficiently alleges a

claim for unpaid overtime when he states that the amount of hours he worked per week exceeded

forty hours and that he did not receive overtime pay. See Juan, 2021 WL 2179344, at *9 (citing

Apolinar v. Glob. Deli & Grocery, Inc., No. 12-CV-3446(RJD)(VMS), 2013 WL 5408122, at *6

(E.D.N.Y, Sept. 25, 2013)) (finding plaintiff's allegations that he worked 53 hours per week but

did not receive overtime sufficient). Plaintiff must allege facts regarding the amount of

uncompensated overtime he worked. See Nam, 2021 WL 878743, at *6 (citing Lundy v. Catholic

Health Sys. of Long Island, Inc., 711 F.3d 106, 114 (2d Cir. 2013) ("To state a plausible FLSA

overtime claim, plaintiff must provide some factual context supporting his claim that he was

uncompensated for time worked in excess of forty hours."); see also Pichardo v. El Mismo

Rincon Latino Corp., No. 17-CV-7439(FB)(SJB), 2018 WL 4101844, at *5 (E.D.N.Y. Aug. 7,

2018) (quoting Nakahata v. New York-Presbyterian Healthcare Sys. Inc., 723 F.3d 192, 201 (2d

Cir. 2013) Report and Recommendation adopted by 2018 WL 4100480 (E.D.N.Y. Aug. 28,

2018).

  Here, plaintiff generally states that he "worked in excess of 40 hours per week" but then

also provides specifics regarding the approximate hours he worked each week. FAC ¶¶ 38-40.

The FAC states that "from approximately May through October in the years 2017, 2018 and

2019" plaintiff worked approximately 59 hours per week. Id. ¶ 39. Plaintiff further alleges that

he worked approximately 56 hours per week from "November through April in the years 2017,

2018, 2019, and 2020." Id. ¶ 40. Despite the number of hours worked, defendants did not pay

plaintiff overtime. Id. ¶ 48. These allegations are sufficient to establish the defendant's liability

for unpaid overtime under the FLSA and NYLL. See Nam, 2021 WL 878743, at *4, *7 (finding

detailed allegations that plaintiffs worked over forty hours a week sufficient to support liability in the default judgment context); see also Juan, 2021 WL 2179344, at *9; Pichardo, 2018 WL 4101844, at *5.

## 2. Spread of Hours Pay Under the NYLL

New York law requires an employer to provide spread of hours pay of "one hour's pay at the basic minimum hourly wage rate" on any day in which the employee worked more than 10 hours. Godwin v. Buka New York Corp., No. 20-CV-969(RPK)(CLP), 2021 WL 612336, at *5 (E.D.N.Y. Feb. 17, 2021) (quoting 12 N.Y.C.R.R. § 142-2.4(a)) Report and Recommendation adopted by 2021 WL 1026553 (E.D.N.Y. Mar. 17, 2021). A plaintiff sufficiently establishes an employer's liability for failure to provide spread of hours pay when he alleges that he worked in "excess of ten hours on a given day" but did not receive spread of hours pay. See Arellano v. Green Apple 37 Inc., No. 20-CV-5293(LJL), 2021 WL 4319568, at *2 (S.D.N.Y. Sept. 23, 2021) (citing Ventura v. Herreros, No. 18-CV-6478(BMC), 2019 WL 343244, at *1 (E.D.N.Y. Jan. 28, 2019) (noting that an employee must work over ten hours a day to receive spread of hours pay and not exactly ten hours); see also Zokirzoda v. Acri Café Inc., No. 18-CV-11630(JPO), 2020 WL 359908, at *3 (S.D.N.Y. Jan. 22, 2020); Martinez, 2017 WL 5033650, at *17-18 (recommending an award of spread of hours pay when plaintiffs alleged they worked over ten hours a day but never received an additional hour of pay).

Here, plaintiff alleges that "defendants failed to pay…the required 'spread of hours' pay for any day in which he had to work over 10 hours a day." FAC ¶ 7. This allegation is sufficient. See Rahman v. Red Chili Indian Café, Inc., No. 17-CV-5156(RA), 2021 WL 2003111, at *3 (S.D.N.Y May 19, 2021) (finding plaintiff's allegation that he regularly worked over ten hours a day but did not receive spread of hours pay sufficient).

**D. Wage Notice and Statement Requirements**

Plaintiff also alleges that defendants failed to provide him with certain notices as required by New York law. FAC ¶ 77. NYLL § 195(1)(a) requires that at the time of hire every employer provide his employees with a written notice, in both English and the employee's preferred language, which contains specified information. This information includes the employee's rate of pay, any claimed allowances, the employee's pay day, and other information about the employer's business. NYLL § 195(1)(a); see also Martinez v. Alimentos Saludables Corp., No. 16-CV-1997(DLI)(CLP), 2017 WL 5033650, at *18-19 (E.D.N.Y. Sept. 22, 2017) Report and Recommendation adopted by Electronic Order (E.D.N.Y. Oct. 18, 2017). Plaintiff's allegation that he was never provided with the written notice required by NYLL § 195(1) is sufficient to establish defendant's liability for failure to provide the notice. See Lu v. Nisen Sushi of Commack, LLC, No. 18-CV-7177(RJD)(ST), 2020 WL 9814084, at *7 (E.D.N.Y. Mar. 14, 2020) Report and Recommendation adopted by Electronic Order (E.D.N.Y. Mar. 31, 2020).

New York law also requires employers to "furnish each employee with a statement with every payment of wages" which contains the dates covered by the payment, the employee's name, the employer's name, the employer's contact information, the employee's rate of pay and other specified information. NYLL § 195(3). Plaintiff's allegation that defendants never provided this statement, FAC ¶¶ 80-81, is sufficient to establish defendants' liability. See Martinez, 2017 WL 5033650, at *21 (finding a defendant liable for a violation of NYLL § 195(3) and recommending damages).

E. "Tools of the Trade" Costs

Plaintiff alleges that defendants required him to provide certain equipment, so-called "tools of the trade," necessary to perform his job and that he never received reimbursement. FAC ¶ 83. He alleges that the purchase of these items, which included a "uniform shirt, shoes, pants, and a hairnet," reduced his wages. Id. ¶¶ 47, 83. Shifting the cost of "tools of the trade" to an employee is impermissible under 29 C.F.R. § 531.35, a regulation promulgated under the FLSA, when doing so reduces the employee's wages. See 29 C.F.R. § 531.35 (2021); see also Lu Nan Fan v. Jenny & Richard's Inc., No. 17-CV-6963(WFK)(RLM), 2019 WL 1549033, at *6, *8 (E.D.N.Y. Feb. 22, 2019) (quoting Ortega v. JR Primos 2 Rest. Corp., No. 15-CV-9183(JCF), 2017 WL 2634172, at *3 (S.D.N.Y. June 16, 2017) Report and Recommendation adopted by 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019). Plaintiff's allegations adequately state a claim for a violation of 29 C.F.R. § 531.35. Lu Nan Fan, 2019 WL 1549033, at *8 (citing Gonzalez v. Masters Health Food Serv. Inc., No. 14-CV-7603(VEC), 2017 WL 3835960, at *20 (S.D.N.Y. July 27, 2017)) (discussing allegations of unreimbursed gas and maintenance purchases for a food delivery vehicle); but see Cazares v. 2898 Bagel & Bakery Corp., No. 18-CV-5953(AJN), 2020 WL 2832766, at *5 (S.D.N.Y. May 31, 2020) (citing Hernandez v. Spring Rest. Grp., LLC, No. 17-CV-6084(AJN), 2018 WL 3962832, at *4 (S.D.N.Y. Aug. 17, 2018) (rejecting a "tools of the trade" claim when plaintiffs failed to allege how much they spent on ordinary wardrobe items, if they were specially made, and why the items were needed). This shifting of costs also violates NYLL § 193. See Osario v. Taste of Thai Inc., No. 17-CV-5664 (JBW)(JO), 2018 WL 8059564, at *3 (E.D.N.Y. Sept. 12, 2018) Report and Recommendation adopted by 2019 WL 1795954 (E.D.N.Y. Mar. 29, 2019)

**F. Applicable Statutes of Limitation**

The statute of limitations applicable to a FLSA action is two years and may extend to

three years if a defendant employer's violations were willful. See Estrade v. Therapy PLLC, No.

20-CV-6125(LJL), 2021 WL 4427068, at *2 (S.D.N.Y. Sept. 27, 2021) (citing 29 U.S.C. §

255(a)). Although a defendant's default waives the statute of limitations as an affirmative

defense, Ge Chun Wen v. Hair Party 24 Hours Inc., No. 15-CV-10186(DF), 2021 WL 3375615,

at *9, (S.D.N.Y. May 17, 2021) (citing United States Sec. & Ech. Comm'n v. Boock, 750 Fed.

Appx. 61, 62 (2d. Cir. 2019) (summary order)) Report and Recommendation adopted by 2021

WL 2767152 (S.D.N.Y, July 2, 2021), the statute still serves to limit the period for which a

successful plaintiff may recover damages, id. (citing Guallpa v. NY Pro Signs Inc., No. 11 Civ.

3133(LGS)(FM), 2014 WL 2200393, at *2 n.2). The Second Circuit instructs that "a Court need

not accept as true a plaintiff's conclusory allegation that a defendant willfully violated the

FLSA." Whiteside v. Hover-Davis, Inc., 995 F.3d 315, 321 (2d. Cir. 2021). Instead, a plaintiff

must "plausibly allege" willfulness before he will be entitled to the extended statute of

limitations. Id. at 323. However, in the default context, violations of FLSA are considered willful

and Courts apply the three-year limitations period which runs from the commencement of

plaintiff's employment. Nam, 2021 WL 878743, at *3 (first citing Leon v. Zita Chen, No. 16-

CV-480(KAM)(PK), 2017 WL 1184149, at *4 (E.D.N.Y. Mar. 29, 2017); and then citing

Wicaksono v. XYZ 48 Corp., No. 10 Civ. 3635(LAK)(JCF), 2011 WL 2022644, at *8-9

(S.D.N.Y. May 2, 2011) Report and Recommendation adopted by 2011 WL 2038973 (S.D.N.Y.

May 24, 2011)).

Here, the Court should apply a three-year statute of limitations to plaintiff's FLSA claims

based on defendants' default. See id. (applying a three-year statute of limitations to FLSA claims

when the defendant defaulted). The complaint was filed on September 8, 2020 and so plaintiff

may recover damages from September 8, 2017 onward. Plaintiff began working for the

defendants in January 2017, FAC ¶ 34, and were FLSA the only applicable statute, this cut off

would limit his total recovery. However, plaintiff also alleges defendants violated his rights

under the NYLL which has a six-year statute of limitations. See Estrada, 2021 WL 4427068, at

*2 (citing NYLL § 663(3)). All of plaintiff's allegations fall well within the six-year period.

Plaintiff cannot receive a "double recovery" under both the FLSA and the NYLL, see Rana v.

Islam, 887 F.3d 118, 123 (2d Cir. 2018), and as will be discussed below, plaintiff will recover

the same amount under the FLSA and the NYLL here. Nam, 2021 WL 878743, at *7 (discussing

how the application of the FLSA and the NYLL and their related regulations yield the same

overtime compensation award). Plaintiff should recover unpaid wages for the entirety of his

employment by defendants.

## II. Damages

It is well established that a default, is "deemed to constitute a concession of all well

pleaded allegations of liability," but it is "not considered an admission of damages." Cement &

Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230,

234 (2d Cir. 2012) (internal quotation marks and citation omitted); see also Credit Lyonnais

Secs. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a

party's failure to defend, the allegations in the complaint with respect to the amount of the

damages are not deemed true."). On a motion for a default judgment, a plaintiff has the burden to

prove damages to the Court with a "reasonable certainty." Credit Lyonnais Secs. (USA), Inc, 183

F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). The Court,

however, does not need to hold a hearing, as "detailed affidavits and documentary evidence" may be sufficient. Cement & Concrete Workers Dist. Council Welfare Fund, 699 F.3d at 234 (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)).

Plaintiff's papers are internally inconsistent regarding the need for an inquest to determine the proper amount of damages to be awarded here. Plaintiff's Memorandum of Law states "[p]laintiff maintains that the proof submitted herewith is sufficient on its own to obviate the need for a hearing on damages." Pl.'s Mem. of Law. 2. However, plaintiff's damages calculations chart contains a notation which states "[t]his chart is based upon preliminary information and the expected testimony of Plaintiffs (sic)." Damages Chart 1, ECF No. 29-1. This contradiction undermines plaintiff's position. However, despite plaintiff's counsel's sloppy work, I find that a proper damages award can be calculated without the need for an inquest.

The burden rests on an employee to prove that he was not appropriately compensated for the work he performed. Newman, 2021 WL 2401176, at *6 (quoting Rodriguez v. Queens Convenience Deli Corp., No. 09-CV-1089(KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011)). When a defendant fails to appear and produce employment records, the Court may credit a plaintiff's assertions regarding the hours he worked and compensation he received, even when based only on his recollection. Hernandez Gomez v. 4 Runners, Inc., 769 Fed. Appx. 1, 2 (2d Cir. 2019) (summary order) (quoting Kuebel v, Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011)); Newman, 2021 WL 2401176, at *6-7 (quoting Rivera v. Ndola Pharm Corp., 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007)); Arnoldo Lopez Vazquez, 2019 WL 4396724, at *6 (citing Perez v. Queens Boro Yang Cleaners, Inc., No. 14-CV-7310(SJ)(JO) , 2016 WL 1359218, at *2 (E.D.N.Y. Mar. 17, 2016)) Report and Recommendation adopted by 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016). A Court may award damages based upon a plaintiff's recollection of

the hours he worked "even though the result is only approximate." Hernandez Gomez, 769 Fed

Appx. at 2 (quoting Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 66-67 (2d Cir.

1997)). Here, plaintiff seeks to recover unpaid overtime wages; spread of hours pay; liquidated

damages; damages for violations of New York's wage notice and wage statement requirements;

damages related to his purchase of "tools of the trade"; and pre-judgment interest. Pl.'s Mem. 2-

7. Plaintiff relies upon his own declaration, Calle Decl., ECF No. 29-2, and a Damages Chart,

ECF No. 29-1.

**A. Unpaid Overtime Pay**

Under both the FLSA and the NYLL, an employee must be paid at an overtime rate of

one-and one-half times his regular rate when he works over forty hours per week. 29 U.S.C. §

207(a)(1); 12 N.Y.C.R.R. § 146-1.4. Although an employer's failure to provide overtime wages

violates both the FLSA and NYLL, an employee "may recover only once." Newman, 2021 WL

2401176, at *9 (citing Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 262 n.44 (S.D.N.Y.

2008)).

Pursuant to federal regulation, an employee's regular rate of pay is determined by

dividing his salary by the number of hours it is intended to compensate. Ge Chun Wen, 2021 WL

3375615, at *10 (quoting 29 C.F.R. § 778.113(a)). This regular rate is then multiplied by one and

one-half to determine the employee's overtime rate. See Id. "[U]nder the FLSA, 'there is a

rebuttable presumption that a weekly salary covers only the first [40] hours, unless the parties

have an alternate agreement.'" Id. (quoting Pinovi v. FDD Enterps., Inc., No. 13-CV-

2800(GBD)(KNF), 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015)). Defendants' default

prevents any rebuttal of the presumption. Newman, 2021 WL 2401176, at *10 (citing Valdez v.

H & S Rest. Operations, Inc., No. 14-CV-4701(SLT)(MDG), 2016 WL 3079028, at *5

(E.D.N.Y. Mar. 29, 2016) Report and Recommendation adopted by 2016 WL 3087053 (E.D.N.Y. May 27, 2016)).

Under New York law, if an employee in the hospitality industry is not paid hourly, the employee's regular hourly rate of pay is determined by dividing their weekly salary "by the lesser of 40 hours or the actual number of hours worked by the employee during the work week." 12 N.Y.C.R.R. § 146-3.5; see also, Rowe v. CC Rest. & Bakery, Inc., No. 17-CV-1423(CBA)(PK), 2019 WL 4395158, at *8 (E.D.N.Y. Aug. 15, 2019) (discussing 12 N.Y.C.R.R. § 146-3.5 and explaining that its provisions are mandatory) Report and Recommendation adopted by 2019 WL 4393987 (E.D.N.Y. Sept. 13, 2019). This regular rate is then multiplied by the number of overtime hours worked each week to obtain the employee's total weekly overtime wages. See Rowe, 2019 WL 4395158, at *8.

Courts allow plaintiffs to recover under the statute which provides the greatest relief. Arnoldo Lopez Vazquez, 2019 WL 4396724, at *6 (quoting Ni v. Bat-Yam Food Servs., Inc., No. 13-CV-7274(ALC)(JCF), 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016)). Here, recovery is appropriate under the NYLL which has a six-year statute of limitations, covering the entire period of plaintiff's employment period. See Ge Chun Wen, 2021 WL 3375615, at *15; Arnoldo Lopez Vazquez, 2019 WL 4396724, at *6 (citing Luna v. Gon Way Constr., Inc., No. 16-CV-1411(ARR)VMS), 2017 WL 835321, at *15 (E.D.N.Y. Feb 14, 2017)) Report and Recommendation adopted by 2017 WL 835174 (E.D.N.Y. Mar. 2, 2017)).

Plaintiff Calle's weekly salary varied depending on the time of year. FAC ¶¶ 39-41; Calle Decl. ¶¶ 8-10. In the years 2017 through 2019, from May through October, plaintiff worked approximately 59 hours per week and was paid a weekly salary of $930. FAC ¶¶ 39, 41; Calle Decl. ¶¶ 8, 10. In the years 2017 through 2020, from November through April, plaintiff worked

approximately 56 hours per week and was paid a weekly salary of $910. FAC ¶¶ 40-41; Calle Decl. ¶¶ 9-10. The FAC and plaintiff's declaration reveal that the only difference in plaintiff's hours between May through October and November through April is plaintiff's additional three hours of work on Fridays from May through October. Compare Calle Decl. ¶ 8 with Calle Decl. ¶ 9.

This information allows the Court to determine the amount of overtime compensation due to plaintiff. The Court calculates plaintiff's overtime rate by first determining his regular rate of pay. Plaintiff's regular rate of pay is equal to his weekly salary divided by forty hours. See Rowe, 2019 WL 4395158, at *8. The regular rate of pay is then multiplied by 1.5 to determine plaintiff's overtime rate of pay. For the months of May through October, plaintiff's regular rate of pay is $23.25 per hour ($930/40). Therefore, his overtime rate of pay is $34.88 ($23.25 x 1.5). For the months of November through April, plaintiff's regular rate of pay is $22.75 per hour ($910/40). Therefore, his overtime rate of pay for that time period is $34.13 ($22.75 x 1.5). From May through October, when plaintiff worked 59 hours per week, he should have received an additional $662.72 ($34.88 x 19) in weekly overtime pay in addition to his weekly salary. For the months of November through April, when he worked 56 hours per week, plaintiff should have received an additional $546.08 ($34.13 x 16) in weekly overtime pay.[8]

The Court must determine the total amount of overtime that defendants owe plaintiff. Plaintiff provides his own calculations in a damages chart filed with his motion. Damages Chart, ECF No. 29-1. However, the data in plaintiff's chart does not align with plaintiff's weekly hours

---

[8] Plaintiff's calculations differ slightly from the Court's calculations. See Damages Chart, ECF No. 29-1. Although plaintiff determined the same overtime rates as the Court, he determined different weekly underpayments. For weeks in which he worked 56 hours, he believes he was underpaid by $546.00, not the $546.08 determined by the Court. For weeks in which he worked 59 hours he believes he was underpaid by $662.63, not the $662.72 determined by the Court.

in both the FAC and plaintiff's declaration. <u>Compare</u> Damages Chart, ECF No. 29-1 <u>with</u> FAC ¶¶ 39-40 <u>and</u> Calle Decl. ¶¶ 8-9. The FAC and plaintiff's declaration state that from May through October, he typically worked 59 hours per week and from November through April, plaintiff typically worked 56 hours per week. FAC ¶¶ 39-40; Calle Decl. ¶¶ 8-9. Plaintiff's damages calculations do not reflect this information. For example, plaintiff's damages chart states that between September 2017 and December 31, 2017, plaintiff only worked 56 hours per week. <u>See</u> Damages Chart at 1, ECF 29-1. Plaintiff's calculations are incorrect for the months of September and October.[9] Therefore, the Court cannot rely on plaintiff's calculations and must calculate the amount plaintiff is due in overtime compensation.[10]

The Court will rely on the work schedule detailed in the FAC and plaintiff's declaration. Plaintiff began working for defendants in January 2017, Calle Decl. ¶ 6, and so the Court will begin calculating overtime compensation from January 1, 2017. The Court calculates the overtime compensation that plaintiff is due from defendant as follows:

| Period | Total Hours Per Week | OT Hours | Weeks[11] | Underpayment[12] | Total |
|---|---|---|---|---|---|
| 1/1/2017-4/30/2017 | 56 | 16 | 17 | 546.08 | 9,283.36 |
| 5/1/2017-10/31/2017 | 59 | 19 | 26.14 | 662.72 | 17,323.50 |
| 11/1/2017-4/30/2018 | 56 | 16 | 25.71 | 546.08 | 14,039.72 |
| 5/1/2018-10/31/2018 | 59 | 19 | 26.14 | 662.72 | 17,323.50 |
| 11/1/2018-4/30/2019 | 56 | 16 | 25.71 | 546.08 | 14,039.72 |
| 5/1/2019-10/31/2019 | 59 | 19 | 26.14 | 662.72 | 17,323.50 |
| 11/1/2019-3/17/2020[13] | 56 | 16 | 19.57 | 546.08 | 10,686.79 |
| | | | | | |
| | | | | **Total** | $100,020.09 |

---

[9] Plaintiff's counsel's declaration similarly conflicts with the FAC and plaintiff's declaration, stating that he worked 56 hours per week from September 1, 2017 through December 21, 2017. Faillace Decl. ¶ 26.

[10] Plaintiff's damages chart also misstates, without explanation, the length of time between different dates. For example, plaintiff's chart states that the length of time between May 1, 2017 and August 31, 2017 is 17 weeks. <u>See</u> Damages Chart, ECF No. 29-1. There are in fact 17 weeks and 3 days between those two dates.

[11] This number is expressed as a decimal when the period between two dates does not equal a whole number of weeks.

[12] The underpayment is equal to plaintiff's overtime rate multiplied by the number of overtime hours worked.

[13] Plaintiff's employment ended on approximately March 17, 2020. Calle Decl. ¶ 6.

Accordingly, I recommend that plaintiff should be awarded $100,020.09 in unpaid overtime compensation against defendants.

## B. Spread of Hours Pay

Under New York law, plaintiff is entitled to "an additional hour of pay at the minimum wage rate for each day on which" he worked more than ten hours. Lamaka v. Russian Desserts Inc., No. 18 Civ. 7354(ILG)(VMS), 2021 WL 2188280, at *11 (E.D.N.Y. Feb. 12, 2021) (citing 12 N.Y.C.R.R. § 146.1.6) Report and Recommendation adopted by 2021 WL 2184870 (E.D.N.Y. May 28, 2021). According to plaintiff's declaration, he only worked in excess of ten hours a day on Sundays when he worked from approximately 11:00 a.m. to approximately 10:00 p.m. Calle Decl. ¶¶ 8-10. Plaintiff is entitled to spread of hours pay for each Sunday between January 1, 2017 and March 17, 2020. The minimum wage in New York City increased several times during the period of plaintiff's employment and the amount of each increase was dependent on an employer's status as a "large" or "small" employer.[14] See NYLL § 652(1)(a). The NYLL defines a "large employer" as an "employer of eleven or more employees" and a "small employer" as an "employer of ten or less employees." Id. The following chart illustrates the change in the minimum wage rate during plaintiff's employment:

| Applicable New York City Minimum Wage NYLL § 652(1)(a) | | |
|---|---|---|
| Period | Large Employer | Small Employer |
| On or after December 31, 2016 | $11.00 per hour | $10.50 per hour |
| On or after December 31, 2017 | $13.00 per hour | $12.00 per hour |
| On or after December 31, 2018 | $15.00 per hour | $13.50 per hour |
| On or after December 31, 2019 | $15.00 per hour | $15.00 per hour |

[14] The NYLL sets the minimum wage amount but also acknowledges that a greater minimum wage may be set by federal law. NYLL § 652(1)(a). The federal minimum wage has remained stagnant at $7.25 since 2009. 29 U.S.C. § 206.

Plaintiff seeks $2,154 in unpaid spread of hours pay. Plaintiff alleges he worked over ten hours every Sunday between January 1, 2017 and March 17, 2020. See Damages Chart 2. Although he never explicitly states his employer's size, plaintiff's calculations reflect the minimum wage rate applicable to large employers in New York City. See id. However, plaintiff's declaration and the FAC both fail to address how many employees worked at defendants' business. In the absence of any information about the size of the business, Courts "apply the minimum-wage rates for 'small-employers.'" See Reyes v. Café Cousina Rest. Inc., No. 18-CV-1872(PAE)(DF), 2019 WL 5722475, at *9 (S.D.N.Y. Aug. 27, 2019) (citing Reyes v. Lincoln Deli Grocery Corp., No. 17-CV-2732(KBF), 2018 WL 2722455, at *7 (S.D.N.Y. June 5, 2018)) Report and Recommendation adopted by 2019 WL 5722109 (S.D.N.Y. Oct. 7, 2019).[15] But see Reyes, 2019 WL 5722475, at *9 (citing Sanchez v. Jyp Foods Inc., No. 16-CV-4472(JLC), 2018 WL 4502008, at *9 n.13 (S.D.N.Y. Sept. 20, 2018) (applying the rate for large employers in light of defendant's default)). The Court applies the rate applicable to small employers, as follows:

| Spread of Hours Pay January 1, 2017 – March 17, 2020 | | | |
|---|---|---|---|
| Period | Applicate Rate | Number of Sundays | Total |
| 01/1/2017-12/30/2017 | $10.50 | 52 | $546 |
| 12/31/2017-12/30/2018 | $12.00 | 53 | $636 |
| 12/31/2018-12/30/2019 | $13.50 | 52 | $702 |
| 12/31/2019-03/17/2020 | $15.00 | 11 | $165 |
| | | | |
| **Total** | | | $2,049 |

Accordingly, I recommend that plaintiff should be awarded $2,049 in unpaid spread of hours compensation against defendants.

---

[15] Plaintiff's counsel in the present matter, Michael Faillace, represented plaintiff in Reyes v. Café Cousina Rest. Inc.

**C. Liquidated Damages**

Plaintiff seeks an award of liquidated damages. As previously discussed, a Court may only award liquidated damages under either the FLSA or the NYLL, not both. See Rana, 887 F.3d at 123. As the NYLL allows for the greatest recovery, the Court considers plaintiff's claims for liquidated damages under New York law. Id.; see also, Cabrera v. Candela, 412 F. Supp. 3d 167, at 183-84 (E.D.N.Y. 2019).

In any action to recover unpaid wages, the NYLL permits an award of liquidated damages "equal to one hundred percent of the total amount of the wages found to be due." NYLL § 198(1-a). An employer may avoid such an award by "prov[ing] a good faith basis to believe that its underpayment of wages was in compliance with the law." Id. However, in the case of a default, a defendant employer is unable to meet this burden and an award of liquidated damages is proper. See Cabrera, 412 F. Supp. 3d at 184; Lopic, 2017 WL 10845064, at *9.

Under the NYLL, plaintiff is entitled to an award of liquidated damages equal to the amount he is owed in unpaid overtime and spread of hours pay. See Ismail v. Bake Ridge Bagels, Inc., No. 18-CV-517(ILG)(RML), 2020 WL 8988274, at *1 (E.D.N.Y. May 26, 2020); Garcia v. Pawar Bros Corp., No. 18-CV-2656(BMC), 2018 WL 4100482, at *2 (E.D.N.Y. Aug. 28, 2018). Accordingly, I recommend that plaintiff should be awarded liquidated damages totaling $102,069.09 ($100,020.09 in unpaid overtime pay + $2,049 in unpaid spread of hours pay) against defendants.

**D. Wage Notice and Wage Statement Damages**

As discussed above, plaintiff seeks to recover damages for defendants' failure to provide him with required notices pursuant to NYLL § 195(1) & (3). FAC ¶¶ 77, 80. Under NYLL § 198(1-b):

> If any employee is not provided within ten business days of his or her first day of employment a notice as required by subdivision one of section one hundred-ninety-five of this article, he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars….

See Martinez, 2017 WL 5033650, at *18-21 (explaining the history and application of NYLL § 195(1)).

The FAC and plaintiff's declaration both assert that plaintiff never received the notice required by NYLL § 195(1). FAC ¶ 77; Calle Decl. ¶¶ 13-14. Plaintiff worked for defendants for approximately three years and three months. Calle Decl. ¶ 6. This period is far in excess of 100 days, the period of time over which the maximum penalty of $5,000 would accrue. See NYLL § 198(1-b). Therefore, plaintiff should be awarded the maximum damages of $5,000 for defendant's violation of NYLL § 195(1).

NYLL § 198(1-d) states that:

> If any employee is not provided a statement or statements as required by subdivision three of section one hundred ninety-five of this article, he or she shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, not to exceed a total of five thousand dollars….

Plaintiff never received the required notice, see Calle Decl. ¶¶ 13-14, and worked far more than the 20 days after which defendants would be liable for the maximum amount of statutory damages.

Accordingly, I recommend that plaintiff should be awarded $5,000 for defendants' failure to provide wage notices and another $5,000 for defendants' failure to provide wage statements. See Newman, 2021 WL 2401176, at *12 (awarding a total of $10,000 for failure to provide wage notices and wage statements for a period of 444 days).

**E. "Tools of the Trade"**

Plaintiff seeks to recover damages for being required to purchase "tools of the trade" without reimbursement from defendants. Pl.'s Mem. 6; Calle Decl. ¶ 15. Defendants failure to reimburse plaintiff for these expenses violates federal employment law. 29 C.F.R. § 531.35. Plaintiff's declaration states that, "[d]efendants required me to purchase uniforms and hairnets out of my own funds." Calle Decl. ¶ 15. He alleges his expenses for this equipment totaled $308. Id. Although plaintiff did not supply receipts for these costs, the Court may accept plaintiff's sworn declaration as proof that he was required to purchase these items and their cost. See Lu Nan Fan, 2019 WL 1549033, at *12; see also Zhen Ming Chen v. New Fresco Tortillas Taco LLC, No. 15 Civ. 2158(RA)(AJP), 2015 WL 5710320, at *4-5 (S.D.N.Y. Sept. 25, 2015) Report and Recommendation adopted by 2017 WL 818469 (S.D.N.Y. Mar. 1, 2017). Accordingly, plaintiff should be awarded $308 as reimbursement for his "tools of the trade" expenses against defendants.

**F. Pre-judgment Interest**

Plaintiff also seeks an award of pre-judgment interest. Pl.'s Mem. of Law 2, 7. Such an award is expressly authorized by the NYLL. See NYLL § 198(1-a). However, prejudgment interest is only available for unpaid wage amounts, not for damages awarded for failure to provide wage notices and statements. See Jacome v. Optical 49, Inc., No. 20-CV-2615(DG)(PK), 2021 WL 3375134, at *12 (E.D.N.Y. July 9, 2021) (citing Ying Ying Dai v. ABNS NY Inc., 490 F. Supp. 3d 645, 662 (E.D.N.Y. 2020) Report and Recommendation adopted by 2021 WL 3373130 (E.D.N.Y. Aug. 3, 2021). When calculating pre-judgment interest under the NYLL, Courts rely on the statutory rate of nine percent set forth in C.P.L.R. § 5004 and use a reasonable midpoint when damages accrued over a period of time. See Jemine v. Dennis, 901 F. Supp. 2d

365, 390-91 (E.D.N.Y. 2012) (citing <u>Pavia v. Around the Clock Grocery, Inc.</u> No. 03-CV-6465(ERK), 2005 WL 4655383, at *8 (E.D.N.Y. Nov. 15, 2005).

Here, the Court finds August 10, 2018, a date roughly equidistant from plaintiff's first and last days of employment, to be a reasonable intermediate point from which to calculate prejudgment interest. <u>See id.</u> (citing <u>Pavia</u>, 2005 WL 4655383, at *8) (finding the midway point between when plaintiff started and ended working for his employer as an appropriate intermediate point). Applying a nine percent per annum rate of interest, plaintiff should be awarded $31,286.31[16] in prejudgment interest from August 10, 2018 through the date of this Report. This amount will increase by $25.17 per day until the entry of judgment.

**G. Post-judgment Interest and NYLL § 198(4)**

Although the FAC requests an award of post-judgment interest, FAC ¶ WHEREFORE (n), plaintiff fails to substantively address this request in his Memorandum of Law. However, an award of post-judgement interest pursuant to 28 U.S.C. § 1961(a) is mandatory in cases where a money judgment is awarded. <u>See</u> <u>Fermin</u>, 93 F. Supp. 3d. at 53 (quoting <u>Duffy v Oyster Bay Indus., Inc.</u>, No. 10 Civ. 3205(ADS)(ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011)) <u>Report and Recommendation adopted by</u> 2011 WL 2259749 (E.D.N.Y. June 2, 2011). Accordingly, I recommend that plaintiff should be awarded post-judgment interest as set forth in 28 U.S.C. 1961(a). Further, I recommend, as provided by NYLL § 198(4), "that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."

---

[16] This amount equals the total amount of unpaid wages ($102,069.09) multiplied by 9%, divided by 365, and then multiplied by the number of days between August 10, 2018 and the date of this Report.

**III. Attorney's Fees and Costs**

**A. Attorney's Fees**

The FLSA and the NYLL both permit the recovery of attorney's fees and costs. 29 U.S.C. § 216(b); NYLL § 663(1). Plaintiff seeks attorney's fees and costs either in accordance with his counsel's retainer agreement or in the amount reflected in counsel's billing records.[17] Faillace Decl. ¶¶ 37-38.

An appropriate attorney's fee award is determined by multiplying a reasonable hourly rate by the reasonable number of hours plaintiff's attorney spent working on a matter. See Newman, 2021 WL 2401176, at *12 (quoting Hensely v. Eckerhart, 461 U.S. 424, 433 (1983)). When examining the reasonableness of a requested fee, the Court determines the "presumptively reasonable fee," the amount that a client would be willing to pay for the attorney's services. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. Of Elections, 522 F.3d 182, 190 (2d Cir. 2008); see also Ryeco, LLC v. Legend Produce Inc., No. 20-CV-4044(FB)(RER), 2021 WL 2742873, at *10 (E.D.N.Y. May 24, 2021) (citing Simmons v. New York City Transit Auth, 575 F.3d 170 (2d Cir. 2009)) Report and Recommendation adopted by 2021 WL 2741605 (E.D.N.Y. July 1, 2021). This calculation of an attorney's fee is often called the "lodestar" method. See Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (citing Arbor Hill, 522 F.3d at 183). Plaintiff bears the burden of providing records and sufficient evidence to support an award of the requested fees. Martir v. Huntington Provisions Inc., No. 19-CV-2412(DRH)(AYS), 2020 WL 2736696, at *8 (E.D.N.Y. Apr. 29, 2020) Report and Recommendation adopted by 2020 WL 2735173 (E.D.N.Y. May 26, 2020).

---

[17] There is a discrepancy between counsel's declaration and the billing records submitted in support of plaintiff's request for attorney's fees. Counsel's declaration requests fees in the amount of $9,812.10 but the billing records state that fees totaled only $3,581.80. Compare Faillace Decl. ¶ 39 with Attorney's Fee Breakdown 3.

Courts are guided by "the prevailing hourly rates in the district in which they sit." Palaghita v. Alkor Capital Corp., No. 19-CV-1504(ARR)(RER), 2021 WL 4464121, at \*12 (E.D.N.Y. Aug. 20, 2021) (citation omitted). In the Eastern District of New York, Courts "have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." Id. (quoting Martinez v. New 168 Supermarket LLC, 19-CV-4526(CBA)(SMG), 2020 WL 5260579, at \*8 (E.D.N.Y. Aug. 19, 2020)) Report and Recommendation adopted by 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020)). Courts also consider counsel's qualifications and experience litigating the matter at issue. Martinez v. City of New York, 330 F.R.D. 60, 67 (E.D.N.Y. 2019) (quoting Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 300 (E.D.N.Y. 2012). Ultimately, the Court has wide discretion in determining a reasonable hourly rate. Id. (quoting Encalada v. Baybridge Enters. Ltd., 612 Fed Appx. 54, 54 (2d Cir. 2015) (summary order)).

After determining a reasonable hourly fee, Courts examine whether the amount of time spent working on a matter was reasonable. Lu Wan v. YWL USA Inc., No. 18-CV-10334(CS), 2021 WL 1905036, at \*6 (S.D.N.Y. May 12, 2021) (quoting Villanueva v. 179 Third Ave. Rest. Inc., No. 16-CV-8782, 2020 WL 8671938, at \*15 (S.D.N.Y. Sept. 3, 2020)). In conducting this review, the Court should deny fees for excessive or unnecessary hours spent working on the case. Martinez, 2017 WL 5033650, at \*27 (quoting Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009)).

**1. Reasonable Hourly Rates**

Plaintiff requests attorney's fees totaling $3,581.80 for 12.20 hours of work. Pl.'s Mem. 7; Attorney's Fee Breakdown, ECF No. 29-3. Plaintiff's counsel's declaration and the accompanying billing records state that attorneys Michael Faillace[18] and Clela Errington and a paralegal worked

---

[18] See supra note 5 discussing Mr. Faillace's suspension in this district and his withdrawal in this case.

on this matter. Faillace Decl. ¶ 38; Attorney Billing Records, ECF No. 29-3. Mr. Faillace is "the Managing Member of Michael Faillace & Associates, PC [and] has been in practice since 1983." Faillace Decl. ¶ 38(a). He describes himself as a "nationally-renowned speaker and writer on employment law" and states that he bills at $450 an hour. Id. Ms. Errington graduated from New York University School of Law in 2012 and focused on labor and employment law early on in her career. Id. ¶ 38(b). She bills at $350 an hour. Id.

Other Courts have noted that Mr. Faillace's $450 hourly rate is at the "upper range of the rates generally awarded to partners in this district" and have reduced his hourly rate to $375. Martinez, 2017 WL 5033650, at *26 (citing Saucedo v. On the Spot Audio Corp., No. 16-CV-451(CBA)(CLP), 2016 WL 8376837, at *18 (E.D.N.Y. Dec. 21, 2016)) Report and Recommendation adopted by 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017); see also De La Cruz Casarrubias v. Surf Ave. Wine & Liquor, Inc., No. 20-CV-3003(AMD)(RLM), 2021 WL 2227977, at *12 (E.D.N.Y. May 11, 2021) (recommending that Mr. Faillace's rate be reduced to $375 per hour in a FLSA default case) Report and Recommendation adopted by 2021 WL 2223275 (E.D.N.Y. June 2, 2021); Quito v. El Pedragal Rest. Corp., No. 16-CV-6634(BMC), 2017 WL 2303979, at *2 (E.D.N.Y. May 26, 2017)) (reviewing other cases involving Mr. Faillace and setting his hourly rate at $375); but see Guauque Castiblanco v. Don Alex Peru, Inc., No. 20-CV-2235(MKB)(RML), 2021 WL 4755701, at *9 (E.D.N.Y. Aug. 20, 2021) (finding Mr. Faillace's rate of $450 an hour to be reasonable in the FLSA default context) Report and Recommendation adopted by 2021 WL 4205195 (E.D.N.Y. Sept. 16, 2021). In reducing Mr. Faillace's rate, Courts have noted that a rate above $375 would be inappropriate in the default context. See De La Cruz Casarrubias, 2021 WL 2227977, at *12; Miranda v. Astoria Provisions, LLC, No. 19-CV-2923(EK)(PK), 2020 WL 6370058, at *10 (E.D.N.Y. July 24, 2020) Report and Recommendation

adopted by 2020 WL 5810160 (E.D.N.Y. Sept. 30, 2020). Accordingly, I recommend that Mr. Faillace's hourly rate should be reduced to $375.[19]

Ms. Errington's hourly rate of $350 exceeds the reasonable hourly rate for senior associates in this district. See De La Cruz Casarrubias, 2021 WL 2227977, at *11-12. Other Courts have approved a rate of $300 per hour for senior associates with nine years of experience practicing wage and hour law. See Kotuwage v. NSS Petroleum Inc., No. 15-CV-4374(FB)(ST), 2019 WL 1370692, at *1 (E.D.N.Y. Mar. 6, 2019) Report and Recommendation adopted by 2019 WL 1370091 (E.D.N.Y. Mar. 26, 2019). Accordingly, I recommend that Ms. Errington's hourly rate should be reduced to $300 per hour.

Although counsel's records and declaration are not explicit, he also seeks a rate of $100 per hour for paralegal work. See Attorney's Fee Breakdown, ECF No. 29-3. This rate is toward the higher end of the rates awarded for paralegal work on FLSA cases in this district. See Martinez, 2020 WL 5260579, at *9. Further, counsel does not identify the paralegal or paralegals assigned to this matter and fails to provide any information about their backgrounds. Therefore, I recommend that the paralegal rate be reduced to $75 per hour. Id. (recommending a reduction in the paralegal hourly rate in a FLSA default case to $75 where counsel did not provide any information other than the paralegals' names).

## 2. Reasonable Number of Hours

The Court must also consider whether the hours expended working on this matter were reasonable. Bliven, 579 F.3d at 213 ("[T]he Court performs a judicial function in assessing the

---

[19] The Court notes that in pertinent part the NYLL permits an *employee* to "recover in a civil action the amount of any such underpayments, [and] together with costs all reasonable attorney's fees…." NYLL § 663(1). A former attorney has "no independent right…to seek a fee award for themselves." Lema v. Mugs Ale House Bar, No. 12-CV-2182(PKC)(JO), 2014 WL 1230010, at *3 (E.D.N.Y. Mar. 21, 2014) (citing Soliman v. Ebasco Servs. Inc., 822 F.2d 320, 322-23 (2d Cir. 1987)). The award of attorney's fees belongs to plaintiff.

attorney's documentation as to how the hours charged were spent and determining whether, in light of the case itself, the fee requested is one that is 'reasonable.'"). Upon review, the Court should reject requests for excessive fees. See Feuer v. Cornerstone Hotels Corp., No. 14-CV-5388(JFB)(SIL), 2021 WL 4894181, at *4-5 (E.D.N.Y. Oct. 20, 2021)

Here, counsel's records state that a total of 12.2 hours were spent on this case. The Court's review finds that, overall, the number of hours expended on this matter is reasonable. See Hong v. Mommy's Jamaican Market Corp., No. 20-CV-9612(LJL), 2021 WL 4843912, at *5 (S.D.N.Y. Oct. 15, 2021) (collecting cases); see also Brummell v. K1 HVAC Inc., No. 19-CV-5488(FB)(RML), 2021 WL 3888138, at *9 (E.D.N.Y. Aug. 13, 2021) (collecting cases) Report and Recommendation adopted by 2021 WL 3884194 (E.D.N.Y. Aug. 31, 2021). However, two items in counsel's billing records should be rejected. First, the records state that on October 8, 2020, a paralegal spent .2 hours filing a notice of appearance for Ms. Errington in the Southern District of New York. See Attorney's Fee Breakdown 2. This case is obviously pending in the Eastern District of New York and the billing records previously stated – and the docket reflects – that Ms. Errington filed a notice of appearance in this matter on September 16, 2020. Therefore, this line item should be deducted from the total amount of paralegal time spent on this matter. Second, the records state that on September 17, 2020 a staff member only identified as "CS" spent .1 hour corresponding with opposing counsel, costing $35. Id. This line item should also be deducted from the total number of hours for which counsel seeks an award of attorney's fees as there is no opposing counsel in this case.

The following chart applies the revised rates to the hours expended in this matter:

| Attorney's Fees | | | |
|---|---|---|---|
| Personnel | Rate | Hours | Total |
| Michael Faillace | $375 | 2.3 | $862.50 |
| Clela Errington | $300 | 5.9 | $1,770 |
| Paralegal(s) | $75 | 3.7 | $277.50 |
| | Total | 11.9 | $2,910 |

Accordingly, I recommend that plaintiff should be awarded $2,910 in attorney's fees for 11.9 hours of work.

**2. Costs**

Plaintiff also seeks costs totaling $699.20, covering the $400 filing fee and service on the defendants. Pl.'s Mem. 7. Although costs are recoverable under both the FLSA and the NYLL, plaintiff must provide adequate support for the amount sought. See Thompson v. Hyun Suk Park, No. 18-CV-6(AMD)(ST), 2020 WL 5822455, at *13-14 (E.D.N.Y. Sept. 1, 2020) Report and Recommendation adopted by 2020 WL 5820547 (E.D.N.Y. Sept. 30, 2020). The Court may take judicial notice of the Court's $400 filing fee. See Pena v. Super Econ. One Way Supermarket Corp., No. 20-CV-3060(MKB)(PK), 2021 WL 4755603, at *13 (E.D.N.Y. Sept. 8, 2021) (citing Joe Hand Promotions, Inc. v. Bernal, No. 18-CV-85(ILG)(SJB), 2019 WL 885930, at *6 (E.D.N.Y. Feb. 22, 2019)) Report and Recommendation adopted by 2021 WL 4398204 (E.D.N.Y. Sept. 25, 2021). However, plaintiff fails to provide support for his remaining fees. Therefore, the Court should not award additional costs. See Piedra v. Ecua Rest. Inc., 2018 WL 1136039, at *2 (E.D.N.Y. Jan. 31, 2018) ("[T]he Court cannot simply accept at face value the other costs that plaintiff's counsel seeks, such as service of process…without additional supporting documentation for those costs.") Report and Recommendation adopted by 2018 WL 1135652 (E.D.N.Y. Feb. 28,

2018). Accordingly, I recommend that plaintiff should be awarded costs of $400 against defendants.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiff's motion for a default judgment should be granted. Plaintiff should be awarded $100,020.09 in unpaid overtime compensation; $2,049 in unpaid spread of hours compensation; $102,069.09 in liquidated damages; $5,000 for defendants' wage notice violation; $5,000 for defendants' wage statement violation; $308 as reimbursement for "tools of the trade" expenses; $31,286.31 in pre-judgment interest to increase by $25.17 per day until the entry of judgment; and post-judgment interest as set forth in 28 U.S.C. 1961(a). If any amount of the judgment remains unpaid after ninety-days or ninety-days after the expiration of the time to appeal, the total amount of the judgment should increase as provided by NYLL § 198(4). I further recommend that plaintiff should be awarded attorney's fees of $2,910 and costs of $400.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. <u>Marcella v. Capital Dist. Physician's Health Plan, Inc.</u>, 293 F.3d 42 (2d Cir. 2002); <u>Small v. Sec'y of Health & Human Servs.</u>, 892 F.2d 15 (2d Cir. 1989); <u>see Thomas v. Arn</u>, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: January 4, 2022
      Brooklyn, New York