```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK



-----------------------------X
                             :
HITLER CALLE,                :
                             :    20-CV-4178 (LDH)(LB)
              Plaintiff,     :
                             :    December 20, 2023
                             :
           V.                :    Brooklyn, New York
                             :
PIZZA PALACE CAFÉ LLC,       :
et al.,                      :
              Defendant.     :
-----------------------------X


       TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
            BEFORE THE HONORABLE LOIS BLOOM
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          MARY BIANCO, ESQ.
                            CSM Legal P.C.
                            60 E. 42nd Street, Suite 4510
                            New York, NY 10165


For the Defendant:          EMANUEL KATAEV, ESQ.
                            DAVID AMINOV, ESQ.
                            Milman Labuda Law Group PLLC
                            3000 Marcus Avenue, Suite 3W8
                            Lake Success, NY 11042



Court Transcriber:          ARIA SERVICES, INC.
                            c/o Elizabeth Barron
                            274 Hovey Road
                            Milo, ME 04463
                            Aria@leinen.net



Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

1          THE CLERK:  Civil cause for status

2    conference, docket number 20-CV-4178, Calle v. Pizza

3    Palace Café, LLC, et al.

4          Will the parties please state your names for

5    the record.

6          MS. BIANCO:  Mary Bianco, CSM Legal, for the

7    plaintiff.

8          MR. KATAEV:  Good morning.  Emanuel Kataev

9    of Milman Labuda Law Group PLLC for the individual

10   defendants in this case.

11         MR. AMINOV:  David Aminov of Milman Labuda

12   Law Group PLLC for the individual defendants in this

13   case.

14         THE CLERK:  The Honorable Lois Bloom

15   presiding.

16         THE COURT:  Good morning, Ms. Bianco and Mr.

17   Kataev and Mr. Aminov.  This is a conference in

18   plaintiff's closed Fair Labor Standards Act case, which

19   had been filed back in September of 2020.  Plaintiff

20   worked as a pizza maker at Pizza Palace and alleges

21   that the defendants, individually named Sasha Ishaqov,

22   Yuri Ishaqov, and Vlady Djouraev, were all joint

23   employers who operated the defendant corporation Pizza

24   Palace LLC as an alter-ego.

25         When defendants failed to respond to

1    plaintiff's amended complaint, plaintiffs moved for a

2    default judgment.  I issued a report and recommendation

3    in January of 2022 recommending that plaintiff be

4    awarded $249,731.08 in damages.  My report was adopted

5    by the Honorable LaShann DeArcy Hall and the clerk

6    entered judgment against the defendants on January 31st,

7    2022.

8              Now, almost two years later, plaintiffs and

9    defendants and Sasha Ishaqov, Yuri Ishaqov, and Vlady

10   Djouraev file what they think is a consent motion.

11   It's labeled as a Federal Rule of Civil Procedure

12   60(b)(1) motion.  It's a letter motion asking the Court

13   to set aside the judgment and to send them to

14   mediation.  And according to the motion, the individual

15   defendants assert that they were not properly served,

16   which plaintiff's counsel rejects, although to avoid

17   motion practice, they say they consented to set aside

18   the judgment.  I then scheduled today's conference.

19             So how does this come to happen?

20             MR. KATAEV:  Would the Court like to hear

21   from the defendants?

22             THE COURT:  I'm asking, how does this come

23   to happen, and stand when you address the Court.

24             MR. KATAEV:  I believe the answer is that

25   the answer is that the defendants were never properly

1  served.

2          THE COURT:  And every time that a report and

3  recommendation is entered by the Court, it marks that

4  the plaintiff shall serve it on the defendants.  I

5  understand that there was a business that was served as

6  well as the individual defendants.  Again, two years

7  later, you're coming to the Court.  I have a different

8  idea of how this might have happened.  You can tell me

9  if this is anywhere close to --

10          So the business may have gone out of

11  business because it's Pizza Palace LLC.  God only knows

12  who is Pizza Palace LLC.  But now, when these three

13  people are trying to start something else up and this

14  judgment is going to ruin their credit, now they

15  suddenly want to put their hand up and come back in, in

16  a case that's been closed for almost two years.

17          MR. KATAEV:  That's entirely speculative,

18  your Honor.

19          THE COURT:  It is.

20          MR. KATAEV:  And that is not what happened.

21          THE COURT:  Okay.  Well, Mr. Kataev, I will

22  tell you this:  Under Rule 55(c), the Court may set

23  aside a final judgment under Rule 60(b), and Federal

24  Rule 60(b) permits a party to seek relief from a final

25  judgment and request reopening of the case under a

1    limited set of circumstances.  Here, the parties move

2    under Rule 60(b)(1), which allows for a default

3    judgment to be set aside for mistake, inadvertent

4    surprise, or excusable neglect.  However, it must be

5    made no more than a year after the entry of the

6    judgment.  We are way past a year.

7              MR. KATAEV:  That may be the case, your

8    Honor, but under 60(b)(4), which is not subject to the

9    one-year requirement --

10             THE COURT:  Guess what?

11             MR. KATAEV:  -- they were never served.

12             THE COURT:  I have a motion.  I rule on the

13   motion I've been given.  I do not liberally construe

14   lawyers' pleadings.  You cannot stipulate to get rid of

15   a judgment of the Court.  You did not do anything

16   properly.  You gave no support to the Court for any

17   basis to do what you're asking it to do.  So I am

18   recommending to Judge DeArcy Hall, and I can cite the

19   cases, that under 60(b)(1), it must be within a

20   reasonable time, no more than a year after the entry of

21   the judgment.

22             There's a case from the Second Circuit

23   that's fairly recent, <u>Mandala v. NTT Data</u> (ph).  It's

24   at 2023 W.L. 8499054 (Second Circuit December 8th,

25   2023).  It states Rule 60(b)(1) has a one-year window

1  that runs from the entry of the judgment.

2          This one-year limitation period is absolute.

3  That's Warren v. Garvin (ph), 219 F.3d 111 at page 114

4  (Second Circuit 2000).

5          Such finality "fulfils the purpose for which

6  civil courts have been established, the conclusive

7  resolution of disputes within their jurisdiction."  And

8  that's Kremer v. Kem Construction Corporation (ph), 456

9  U.S. 461 at page 467, note 6 (Supreme Court 1982).

10          So, again, here the judgment was entered on

11  January 31st, 2022.  That's ECF number 39.  And the

12  motion here was filed on November 21st, 2023.  That's

13  ECF number 41, one year, nine months and 21 days later.

14  Accordingly, I respectfully recommend that the parties'

15  motion at ECF 41 should be denied pursuant to 28 USC

16  636(b)(1) and Rule 72(b) of the Federal Rules of Civil

17  Procedure.

18          The parties shall have 14 days from today,

19  because I'm giving you this report on the record, to

20  file written objections.  That's under Federal Rule of

21  Civil Procedure 6.  Such objections shall be filed with

22  the clerk of the Court and any request for an extension

23  of time to file objections must be made within the 14-

24  day period.  If you fail to file a timely objection to

25  the report, that general waives any further judicial

1  review.  <u>Marcella v. Capital District Physicians Health</u>

2  <u>Plan</u>, 293 F.3d 42 (Second Circuit 2002).  <u>Small v.</u>

3  <u>Secretary of Health and Human Services</u>, 892 F.2d 15

4  (Second Circuit 1989).  And see <u>Thomas v. Oren</u> (ph),

5  474 U.S. 140 (1985).

6           Anything else?

7           MR. KATAEV:  No.  We'll be making the

8  appropriate motion.  Thank you, your Honor.

9           THE COURT:  Again, I want you to think this

10  one through because whether or not your clients believe

11  that they were properly served, you gave the Court

12  nothing, no support.  You gave a stipulation under a

13  different basis than what the letter motion was, big

14  waste of the Court's resources.

15          MR. KATAEV:  I understand what the Court is

16  saying and we will be guided by that.  But the purpose

17  of what we did, your Honor, was to avoid the costly

18  practice of making a motion.  That's why we stipulated.

19          THE COURT:  There's a judgment of a federal

20  court, Mr. Katanev (sic).

21          MR. KATAEV:  It's Mr. Kataev, your Honor.

22          THE COURT:  Your client is paying you to do

23  the work correctly.  You can't shortcut by telling the

24  Court something that you've agreed upon where there's

25  no basis in law or in fact.

1          MR. KATAEV:  I understand about the
2    60(b)(1).  The correct --
3          THE COURT:  Well, I will also tell you, you
4    filed a stipulation.  That doesn't to a court judgment.
5          MR. KATAEV:  Fine.  We will -- we will --
6          THE COURT:  There's a judgment.  You did
7    nothing to show the Court a route and a basis to get
8    the Court where you want it to go.
9          MR. KATAEV:  I understand, your Honor.
10          THE COURT:  You just -- and let me just tell
11   you, Ms. Bianco, I'm sort of surprised that Ms. Sojo
12   didn't come herself.  This was a Faillace case.
13          MS. BIANCO:  Yes.
14          THE COURT:  We had so many problems with
15   Faillace.  So for her to give me this end run without
16   any legal support -- there's a judgment.  It's been
17   entered for almost two years.  And by stipulation, we
18   should just say, oh, all that work we did.  And why
19   your client would agree to it when they got a judgment
20   for a lot of money from this Court -- so something is
21   not computing here.
22          MR. KATAEV:  I understand the Court's
23   position.  We will address those concerns.
24          THE COURT:  I do not want people being paid
25   under the table to get out of lawful entries of

1    judgments.  Do you understand how it seems to me?  Your

2    clients are going to collect on $249,731.08 plus

3    interest accruing from when that was entered, and now

4    you're agreeing that there's going to be a lesser

5    amount collected?  Who is getting the kickback here?

6              MR. KATAEV:  Your Honor, I respectfully

7    submit that there's a lot of speculation and

8    conjecture.

9              THE COURT:  That's true, Mr. Kataev.

10              MR. KATAEV:  I would like to --

11              THE COURT:  But you understand why I'm

12    angry, don't you?

13              MR. KATAEV:  I understand but --

14              THE COURT:  Because there was a lot of work

15    that went into this case for you to slapdash a couple

16    of pages together and send it to the Court, and think

17    that the Court should then give you the result that

18    your clients are hoping for.

19              MR. KATAEV:  Your Honor, I'm not hoping for

20    anything.  I took the path of least resistance.  Making

21    a motion is very costly.  I represent three individual

22    defendants who are no longer in this business.  Here is

23    what happened, to assuage the Court's concerns:  First

24    of all, there's been no back-dealing between our firms.

25    Our firms don't get along, for what it's worth.

```
1              THE COURT:  So why would anybody agree to
2    take something different?
3              MR. KATAEV:  No one agreed to take anything
4    different.  They saw --
5              THE COURT:  What was the stipulation?
6              MR. KATAEV:  They saw that our motion has
7    merit because the defendants were not properly served.
8    60(b)(4) doesn't have the one-year limit.
9              THE COURT:  I would like to see all of your
10   clients come into the courtroom.  If there's going to
11   be any sort of application, it has to be well-supported
12   in the law.  And then, again, I could never believe
13   there was somebody named Hitler Calle in the first
14   place.  But since you're saying that your client's name
15   is Hitler, you can get them in but not on these papers
16   because this is all for naught.  And for you to say
17   that you were taking the path of least resistance -- do
18   not expect a federal court to follow you down that
19   path.
20             MR. KATAEV:  Understood, your Honor.
21             THE COURT:  That's lazy and that is not what
22   the Court is about.  I already put all the work in.
23   Judge DeArcy Hall already put the work in.  There's a
24   judgment.  You can't wipe out a judgment by a half-
25   backed idea.
```

1            MR. KATAEV:  Your Honor, again, Rule 1

2    requires the rules to be construed in the path for the

3    speedy, inexpensive, and just determination of --

4            THE COURT:  You know, again, Mr. Kataev --

5            MR. KATAEV:  Okay.  That's all I was trying

6    to do.

7            THE COURT:  You should fall on your sword,

8    say you've now learned the lesson again that the easy

9    way is not always going to win the day.

10            MR. KATAEV:  Your Honor, I'm not arguing

11    with you that my motion has merit.  I understand that

12    the Court made its decision.  I accept that decision.

13    I will now follow the rule that the Court wants us to

14    follow to get this done the right way.

15            THE COURT:  The Federal Rules.

16            MR. KATAEV:  I am just --

17            THE COURT:  There are no other rules.

18            MR. KATAEV:  I am just explaining why we

19    took the path that we did.  It was a cost-saving

20    measure.

21            THE COURT:  It wasn't a cost-saving measure.

22    Now you see that it was not a cost-saving measure.

23            MR. KATAEV:  That's fine.

24            THE COURT:  It didn't save you, it didn't

25    save me, and now Judge DeArcy Hall is going to have to

1    deal with it, too.

2              MR. KATAEV:  Understood, your Honor.

3              THE COURT:  It didn't save anybody.

4              MR. KATAEV:  Okay, I understand.  I acted

5    with the right intentions is my point.

6              THE COURT:  Again, I would like to hear from

7    the Hitler, Sasha, Yuri, and Vlady person how this is

8    all going to play out because this was a 35-page report

9    and recommendation entered back in January of 2022.

10   The judgment was on January 31st, 2022.

11             I imagine you were trying to collect on

12   behalf of your clients.  Is that what happened?

13             MS. BIANCO:  Yes, your Honor.

14             MR. KATAEV:  I can provide some more detail

15   on that.

16             THE COURT:  Go ahead because I'm all ears.

17             MR. KATAEV:  Sure.  There seems to be a lot

18   of speculation that needs to be cleared up, so here's

19   what happened:  We were never served with any of these

20   papers ever.  We first learned about this lawsuit in

21   November.

22             THE COURT:  As an LLC --

23             MR. KATAEV:  I don't represent an LLC.

24             THE COURT:  -- they were required to be

25   registered.

1          MR. KATAEV:  I don't represent --

2          THE COURT:  And they were probably served in

3   accordance with what they were registered with the

4   Secretary of State.

5          MR. KATAEV:  I don't represent the LLC, I

6   only represent the individual defendants.  I don't care

7   about the LLC.

8          THE COURT:  And who was the LLC?

9          MR. KATAEV:  I don't know.

10          THE COURT:  Oh, so these -- if I was to put

11   these people on the -- on the stand and have them

12   sworn, they would say they have no idea who the LLC

13   was.

14          MR. KATAEV:  As far as I know, the LLC --

15          THE COURT:  You probably didn't ask them

16   that, did you?

17          MR. KATAEV:  I did ask them that.  Your

18   Honor, I would like to be heard without -- without --

19          THE COURT:  Mr. Katanev, I have a history

20   with you.  I don't like to be interrupted and I don't

21   like for you to present this as if I am doing something

22   untoward by questioning you.  You want to tell me your

23   tale, I'll listen to your tale.  Go ahead.

24          MR. KATAEV:  It's not a tale, your Honor.  I

25   respectfully reject that.

1          THE COURT:  Okay, go ahead, sir.

2          MR. KATAEV:  And whatever happened in a

3  prior case has nothing to do with this case, and I

4  think that this Court is aware of the opposing counsel

5  in that case, and I'll leave it at that, okay?  Here is

6  what happened:  This LLC that's a defendant in this

7  case is the -- I don't want to say predecessor but it

8  was the prior entity owned by different people.  My

9  three clients have no membership interest in this LLC,

10  okay, which is one of the reasons why they were never

11  properly served.  That's one.

12          Two, my clients never received notice of

13  this lawsuit.  Their names are incorrect.  Their last

14  name is not Ishaqov, okay?  It's I-s-k-h-a-k-o-v, all

15  right?  And what happened here was that judgment

16  enforcement action was taken against the person named

17  Sasha, whose real name is Alexander, by the way, not

18  Sasha.  He's not working.  His wife works.  They live

19  together and their joint bank account was restrained by

20  the judgment enforcement action.  This poor woman --

21          THE COURT:  And what was their relationship

22  to Pizza Palace?

23          MR. KATAEV:  They owned -- the three of them

24  or some of the three of them owned the business after

25  this LLC sold it to them.

1        THE COURT:  And when was that?

2        MR. KATAEV:  I don't recall the dates but I

3  do have a declaration I prepared in anticipation of

4  motion practice, in which those dates are there, which

5  will be filed with the Court in short order.

6        THE COURT:  I'm not going to get to those

7  dates.  You don't understand.  If you don't get this

8  reopened without just citing a different rule, you're

9  not going to get to those dates.

10        MR. KATAEV:  I understand the Court's

11  position.

12        THE COURT:  So this was a case that --

13  again, it was Pizza Palace Café doing business as Pizza

14  Palace, and this guy Hitler said that they didn't pay

15  him.  And I would imagine, because they're saying that

16  all the defendants were joint employers and that they

17  shared control over the employees of the Pizza Palace,

18  I would imagine -- since this guy is saying he worked

19  from 2017 through 2019 and then again in 2020, I would

20  imagine that there was some overlap between your

21  clients and the people who were the Pizza Palace LLC,

22  no?

23        MR. KATAEV:  There may have been but that

24  doesn't change the fact that they were never properly

25  served.

1            THE COURT:  So what were the dates that

2  your --

3            MR. KATAEV:  There's no affidavit of

4  service.

5            THE COURT:  What were the dates that your

6  clients were in this pizza business?

7            MR. KATAEV:  I don't know the dates off the

8  top of my head.  I have it in a written declaration

9  that I prepared in anticipation of motion practice.

10            THE COURT:  So get your written declaration

11  in.

12            MR. KATAEV:  That's what I have to do.

13            THE COURT:  No, you're saying you don't

14  know.  It's got to be something on your email, on your

15  phone, something.

16            MR. KATAEV:  I can look.

17            THE COURT:  Because, again, if it's the same

18  years, 2017 through 2020 --

19            MR. KATAEV:  It's not the full six-year

20  period.  It's a smaller portion of it.

21            THE COURT:  Do you have anything you want to

22  chime in with here, Ms. Bianco?

23            MS. BIANCO:  No.  I agree that we'll --

24  we'll submit the proper papers.  I was added to this

25  case late as you saw.  The only thing I can assert is

1  that that is his real name.  We were as surprised as

2  the Court is at the first name but we believe -- we

3  contest proper service.

4          THE COURT:  You're talking about plaintiff's

5  real name is Hitler.

6          MS. BIANCO:  Yes, your Honor.

7          THE COURT:  But as far as Sasha Ishaqov and

8  Yuri Ishaqov and Vlady Djouraev, how did your client

9  come up with those names because now Mr. Katanev is

10 saying that's not anyone's name.

11         MR. KATAEV:  My name is Kataev.  I don't

12 have an "n" in my name.

13         THE COURT:  Kataev, sorry.

14         MS. BIANCO:  Sasha can be a nickname for

15 Alexander, so that would clear up the Alexander versus

16 Sasha.  We did a search and our client confirmed that

17 these were the names that he used to address his bosses

18 and the owners.

19         THE COURT:  And as far as Pizza Palace LLC?

20         MS. BIANCO:  To our knowledge, that is the

21 LLC owned by the defendants and that was operating at

22 the time that our client was employed there.  That's

23 all.

24         THE COURT:  And service you were going to

25 tell me was properly made so --

1          MS. BIANCO:  We believe, yes.

2          THE COURT:  And when the collection was

3  going through and Mr. Kataev is saying that he first

4  got notice when his wife's bank account was being

5  frozen, was he served at a different address for the

6  collection than he was served for the purposes of the

7  action?

8          MS. BIANCO:  That I would have to confirm

9  with --

10          THE COURT:  Well, that's something you

11  should look into as well.

12          MS. BIANCO:  Of course.

13          MR. KATAEV:  He wasn't -- he wasn't served.

14  We got it from the bank.  He never received it.  All

15  they knew was that their bank accounts were frozen and

16  they had no idea why.  And I stepped in to help them

17  and I found out that it's from Chase.  We have facts

18  with this case --

19          THE COURT:  But that's on the one guy,

20  Sasha.  What about the other people?

21          MR. KATAEV:  No judgment enforcement action

22  was taken against them as far as I know, and I

23  nonetheless willingly agreed to accept service so that

24  we can move forward and get this case resolved.

25          THE COURT:  But I asked you when was it

1  that --

2          MR. KATAEV:  I don't have the declaration,

3  your Honor.  It's in my office.  I could submit it

4  today when I get to my office.

5          THE COURT:  I don't want to see piecemeal

6  work.  I am so not interested in doing this your way.

7          MR. KATAEV:  Okay.

8          THE COURT:  There's only one way to do this.

9  It's the Federal Rules of Civil Procedure.  You don't

10 give the Court support for it, you're not going to get

11 what you are asking for.

12         MR. KATAEV:  And I've already stated I

13 understand that and I'm going to make the appropriate

14 motion.

15         THE COURT:  So anything else you wanted to

16 tell me?  You said that they didn't know anything about

17 it until they got served through their bank that their

18 bank account was frozen.  He's not working, she's

19 working.  So what else?

20         MR. KATAEV:  They didn't get served, your

21 Honor.  The bank accounts were frozen.

22          THE COURT:  And what about the other two?

23         MR. KATAEV:  What about them?  They never

24 received service of it, either.  All service was made

25 on the business to a guy named Lewar (ph).  We don't

1  know who that is.

2           THE COURT:  I have no idea what you're

3  talking about but when the --

4           MR. KATAEV:  Affidavits of service filed

5  with the Court show --

6           THE COURT:  When the clerk of court enters a

7  default judgment, it's because the proof of service has

8  complied, and it is usually my practice -- it says it

9  was served on Sasha Ishaqov at 63-60 108th Street.

10          MR. KATAEV:  Upon?

11          THE COURT:  It says --

12          MR. KATAEV:  There's not a single affidavit

13  of service that these papers were served upon any of

14  these individuals actually individually.  It was served

15  on a place of business, which is not a proper place to

16  serve an individual person.  It's not a suitable agent

17  discretion (sic).

18          THE COURT:  And they are saying they had

19  closed the business by that time?

20          MR. KATAEV:  The business hasn't been

21  closed.  My understanding is that it has been sold.  So

22  there's a period of time where my clients, some or all

23  of them, owned this business and there's a period of

24  time where they no longer owned it.

25          THE COURT:  So these affidavits of service

```
1   are saying that they went to that place of business and

2   served these, and they give the white male, black hair,

3   35 years old, 180 pounds.  And it's a process server,

4   it's not somebody who is a friend of family member of

5   Hitler Café -- Hitler Calle.

6           MR. KATAEV:  Your Honor, the affidavits of

7   service are entitled to a presumption of validity but

8   that presumption is rebuttable.

9           THE COURT:  Except two years, you're out of

10  the box on that, plus the fact that Pizza Palace Café

11  was served through the Secretary of State.

12          MR. KATAEV:  I understand this Court's

13  desire to have finality in this case but 60(b)(4) is

14  not --

15          THE COURT:  It's not my desire to have

16  finality, it is final.  There's a judgment entered.

17  You're two years after the judgment.

18          MR. KATAEV:  60(b)(4) is not subject to the

19  one-year limit.

20          THE COURT:  You'll have to brief it and give

21  me specifics and have attached to it affidavits because

22  I'm not going to do this in your short and easy way.

23          MR. KATAEV:  Understood.

24          THE COURT:  That is not under the Federal

25  Rules.  You're a lawyer, you should know better.
```

1          MR. KATAEV:  Understood, your Honor.  I've

2   already said that I'll make the appropriate motion.

3          THE COURT:  Okay.  Anything else that needs

4   to be addressed on behalf of plaintiff today?

5          MS. BIANCO:  That's all for plaintiffs.

6          THE COURT:  I still don't understand why

7   plaintiff would give up a judgment for a sum certain.

8          MS. BIANCO:  I think the thinking is that

9   it's oftentimes better to mediate than try to collect

10   this large amount because if the clients declare

11   bankruptcy, then our client doesn't get anything.

12          THE COURT:  But you already have one bank

13   account.  Have you tried to attach the other two

14   people's bank accounts?

15          MS. BIANCO:  I'm sure that they have but to

16   no --

17          THE COURT:  Well, this is something that

18   somebody from your office should be prepared to tell

19   the Court.

20          MS. BIANCO:  Of course.

21          THE COURT:  I am not against doing something

22   that will give finality in a just way.  I am against

23   reopening a judgment after two years on flimsy and no

24   legal basis.  Again, just saying we didn't get served,

25   we didn't get served, we didn't get served does not get

1   you anywhere.

2            MR. KATAEV:  How does a person be expected

3   to respond to a lawsuit that they never received, your

4   Honor?

5            THE COURT:  Mr. Kataev, they served the

6   Secretary of State and they served three summonses at a

7   business that your clients -- you couldn't tell me

8   whether they were there or not at that period of time.

9   Forget whether it was then that were handed it but I --

10  I'm telling you if I have to put these people under

11  oath --

12           MR. KATAEV:  That's fine.  I met with them.

13           THE COURT:  Yes, sir, you did, but they

14  thought there would be no repercussions and then their

15  bank account was frozen and all of a sudden, they're

16  running to a lawyer.

17           MR. KATAEV:  More speculation and

18  conjecture, your Honor.  We look forward to submitting

19  the motion.

20           THE COURT:  That's very try but besides the

21  motion, have your clients prepared to testify under

22  oath as to how they found out about this and why, if

23  they were still operating the restaurant at the time

24  that these affidavits of service were filed, why they

25  would have never found out about this.

1           MR. KATAEV:  Understood, your Honor, fair

2   enough.

3           THE COURT:  Okay, Happy Holidays, everybody.

4   This matter is adjourned.

5           MS. BIANCO:  Happy Holidays.

6           THE COURT:  Thank you.

7           MS. BIANCO:  Thank you.

8           MR. KATAEV:  Thank you for your time, your

9   Honor.

10                  *  *  *  *  *  *  *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18        I certify that the foregoing is a correct

19   transcript from the electronic sound recording of the

20   proceedings in the above-entitled matter.

21

22

23

24

25   ELIZABETH BARRON                  December 20, 2023